525 A.2d 1189

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Ricky D. PINKINS, Appellee.**

Supreme Court of Pennsylvania.

Argued March 13, 1987.

Decided May 22, 1987.

420

James P. Epstein, Dist. Atty., Charles S. Hersh, Asst. Dist. Atty., Mercer, for appellant.

Robert B. Lawler, Eric B. Henson, Philadelphia, Richard A. Lewis, Harrisburg, for amicus curiae.

David J. Graban, Sharon, for District Attorneys' Assoc.

David J. Graban, Fruit, Dill, Goodwin & Scholl, Sharon, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Two issues are presented for our consideration in this case. They are 1) whether a criminal defendant's Sixth Amendment right of confrontation[1] is violated by the ad-

---

1. The Sixth Amendment to the U.S. Constitution provides, in relevant part, as follows:

mission into evidence of a co-conspirator's out-of-court declarations, where the prosecution fails to prove that the declarant is unavailable to testify at trial; and 2) whether a defendant has a reasonable expectation of privacy with regard to his parent's search of the parent's residence in which the defendant lives for a murder weapon belonging to that parent.

Appellee, Ricky D. Pinkins, was one of six men charged with murder, robbery and conspiracy in connection with the armed robbery of the owner and patrons of Porreca's Restaurant & Bar in Sharon, Pennsylvania.[2]

On January 9, 1982, at approximately 9:30 p.m., three men entered Porreca's Restaurant. One held a shotgun, another held a revolver, and the third acted as the bagman. Two men remained outside in the getaway vehicle. The men in the restaurant robbed the owner and the patrons, one of whom was beaten with the shotgun. As the restaurant owner surrendered his wallet, the perpetrator holding the revolver shot and killed him.

Appellee was not one of the five men at the restaurant, but he was the supplier of the revolver and possibly, the shotgun. The Commonwealth's evidence was that the five agreed at the Colony Bar to rob a place to get money and they needed weapons to carry out their plan. Appellee was called and they drove directly to his home. He was informed by Anthony Wells that a "piece" was needed to get some money. Appellee by his own admission provided

> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.
>
> The U.S. Supreme Court has determined that "the Sixth Amendment's right of an accused to confront the witnesses against him is ... a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

**2.** The others involved in the robbery were Henry Bruce (pleaded guilty to murder of the second degree, robbery and conspiracy); Albert Boatwright (pleaded guilty to murder of the third degree); Albert Phillips (pleaded guilty to murder of the third degree, robbery and criminal conspiracy); Eugene Grannison (convicted by a jury of murder of the second degree, robbery and criminal conspiracy); and Anthony Wells (acquitted of all charges by a jury).

Wells with a loaded .32 caliber revolver. There was some testimony that appellee may also have supplied the shotgun used in the robbery. The five then drove to Porreca's Restaurant. Following the robbery, the five divided the money among themselves, and Wells expressly withheld a share for appellee. The next day, appellee's share and his revolver were returned to him.

Approximately three weeks later, acting upon an informant's tip, police approached appellee's mother without a search warrant and prevailed upon her to search her son's bedroom for the murder weapon. Appellee's bedroom was located in his mother's home. The revolver, which belonged to appellee's mother, was located by her in appellee's jacket pocket in the closet of his bedroom. The furniture arrangement in appellee's bedroom made entry into the closet awkward. When appellee was confronted with the weapon, he made a statement to police in which he admitted giving the revolver to Anthony Wells.

Henry Bruce and Albert Boatwright testified against appellee at his trial, and appellee's taped statement was played for the jury. Statements made by Anthony Wells were introduced at trial under the co-conspirator exception to the hearsay rule. Following his conviction by a jury of murder of the second degree, robbery and criminal conspiracy, appellee moved for a new trial, alleging, among other matters, that the trial court erred in admitting into evidence the statements of Anthony Wells. Appellee argued in support of this contention that 1) the Sixth Amendment right of confrontation was violated by the co-conspirator exception to the hearsay rule; 2) Anthony Wells cannot be a co-conspirator in the legal sense in that Wells was acquitted of all charges at a prior trial; and 3) there was not sufficient independent evidence of a conspiracy to permit Wells' statements to be admitted into evidence. Appellee also alleged that he had a reasonable expectation of privacy as to the closet area of his bedroom and that his Fourth Amendment rights were violated by his mother's search of this area,

thereby requiring the suppression of the discovered murder weapon and his statement.

The trial court determined that all of appellee's assignments of error were without merit and denied appellee's motions for new trial and arrest of judgment. On June 2, 1983, appellee was sentenced to life imprisonment. A divided panel of the Superior Court vacated the judgment of sentence and remanded the case for a new trial, finding that the Sixth Amendment right of confrontation is violated when the hearsay statements of a co-conspirator are admitted into evidence without a showing that the declarant is unavailable. *Commonwealth v. Pinkins,* 343 Pa.Super. 44, 493 A.2d 1365 (1985). Superior Court based its decision upon its reading of *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and stated:

> Because there is nothing in the record to indicate that the Commonwealth ever established that Wells could refuse to testify against [appellee], the Commonwealth failed to carry its burden of demonstrating the declarant's unavailability.

343 Pa.Super. at 53, 493 A.2d at 1370.

Superior Court also considered appellee's claim regarding his expectation of privacy in his bedroom closet and determined that the weapon was properly seized and that the revolver and appellee's statement were properly admitted into evidence.

We granted the Commonwealth's Petition for Allowance of Appeal, and we now reverse.

■ The trial court and Superior Court correctly determined that Wells' acquittal would not bar admission of his statements under the co-conspirator exception to the hearsay rule,[3] in that the burden of proving the existence of a

---

**3.** This exception is based upon the fact that the conspirators, acting together, act as one. Thus,

[I]f a person has conspired with one or more other persons to do an unlawful act, each represents the other with respect to the act to be accomplished and everything said or done by any of them in pursuance of the common purpose is admissible against all.

424

conspiracy differs for purposes of an evidentiary ruling from the burden of proving the existence of the crime of conspiracy. The Commonwealth is required to prove beyond a reasonable doubt all the elements of an offense charged for purposes of conviction. With respect to the introduction of evidence under the co-conspirator exception, however, the Commonwealth is only required to prove the existence of a conspiracy by a fair preponderance of the evidence. *See Commonwealth v. Hirsch*, 225 Pa.Super. 494, 311 A.2d 679 (1973). Thus, an acquittal on a conspiracy charge does not preclude the possibility that the Commonwealth can show, by a fair preponderance of the evidence, that a conspiracy exists, as it did in this case.

■ Superior Court stated that there "may" be sufficient independent evidence of appellee's complicity in the enterprise, but characterized such evidence as "tenuous" and thus impliedly found insufficient evidence to prove the existence of the conspiracy. Our review of the record, however, leads us to hold that there was *substantial* evidence of the conspiracy which was ably summarized by the trial court as follows:

1. The five men at the Colony Bar agreed to rob a place and recognized the need for weapons. Wells then admittedly called [appellee].

2. After the call, the co-conspirators went directly to [appellee's] home.

3. [Appellee] had his "piece" ready for Anthony Wells when Wells arrived. Wells spent from 5 to 10 minutes in the house and admittedly advised [appellee] that he wanted a piece to get some money.

4. Wells came out of the house with a loaded pistol ... [appellee] had given him. . . . Although it was one of the coldest nights of the winter, [appellee] came out of the house, approached the car and spoke to the conspirators seated in it, all of whom he was friendly with. Wells got in the car and the five drove to Porreca's Bar and committed the murder/robbery.

1 Henry, Pennsylvania Evidence § 442 (1953).

5. After the robbery, the five divided the money into shares and an extra share was held out.

6. After the crime, Wells admittedly telephoned [appellee] and advised what had occurred. When told that Bruce had shot Mr. Porreca, [appellee] did not ask how or why Bruce was along or how he had gotten the gun.

7. The next morning [appellee] received back the murder weapon and acknowledged to Bruce that he had received his share of the money. When Bruce asked if [appellee] had received "that money," [appellee] responded he had without further inquiry, obviously knowing the nature, source and purpose of the money involved.

8. It was only after Detective White told Boatwright that he had a statement from [appellee] that Boatwright admitted his guilt.

Opinion of the Court at 20–21 (May 31, 1983). Thus, there was sufficient evidence to prove the existence of the conspiracy by a preponderance of the evidence.

■ Additionally, Superior Court appeared to bolster its Confrontation Clause analysis with its findings regarding the independent evidence of a conspiracy and interpreted *Ohio v. Roberts, supra,* to hold that the Sixth Amendment requires proof of unavailability for the admission into evidence of a co-conspirator's out-of-court declarations. This interpretation is incorrect. In fact, the U.S. Supreme Court specifically rejected an interpretation of *Roberts* that would require a showing of unavailability for the admission of *any* out-of-court statement. *U.S. v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). In *Inadi,* that Court addressed whether the Confrontation Clause requires that the prosecution establish unavailability as a condition to admission of the out-of-court statements of an unindicted nontestifying co-conspirator, when those statements otherwise satisfy the co-conspirator exception to the hearsay rule.[4]

4. The federal rule, like its counterpart in this state, provides that a statement is not hearsay if it is offered against a party and is "a statement by a co-conspirator of a party during the course and in

The U.S. Supreme Court held that the "unavailability rule" is not applicable to co-conspirators' out-of-court statements, and in support thereof stated:

> Conspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand. Even when the declarant takes the stand, his in-court testimony seldom will reproduce a significant portion of the evidentiary value of his statements during the course of the conspiracy.
>
> In addition, the relative positions of the parties will have changed substantially between the time of the statements and the trial. The declarant and the defendant will have changed from partners in an illegal conspiracy to suspects or defendants in a criminal trial, each with information potentially damaging to the other. The declarant himself may be facing indictment or trial, in which case he has little incentive to aid the prosecution, and yet will be equally wary of coming to the aid of his former partners in crime. In that situation, it is extremely unlikely that in-court testimony will recapture the evidentiary significance of statements made when the conspiracy was operating in full force.

106 S.Ct. at 1126–27.[5]

That Court also determined that an "unavailability rule" would impose an unacceptably substantial and significant burden upon the entire criminal justice system stating:

furtherance of the conspiracy." Federal Rule of Evidence 801(d)(2)(E). *Accord Commonwealth v. Dreibelbis,* 493 Pa. 466, 475, 426 A.2d 1111, 1115 (1981) (co-conspirator "exception allows statements by a co-conspirator to be admitted against an accused if the statements are made during the conspiracy, in furtherance thereof, and where there is in other evidence of the existence of a conspiracy.").

5. That the declarant in this case, Anthony Wells, was acquitted of all charges, is no guarantee that he would be inclined to assist the Commonwealth in its prosecution of appellee. We believe that the *Inadi* opinion applies to *all* nontestifying co-conspirators and do not find that the U.S. Supreme Court left open the possibility of carving out an exception for acquitted co-conspirators.

A constitutional rule requiring a determination of availability every time the prosecution seeks to introduce a co-conspirator's declaration automatically adds another avenue of appellate review in these complex cases. The co-conspirator rule apparently is the most frequently used exception to the hearsay rule. See 4 D. Louisell & C. Mueller, Federal Evidence § 427, p. 331 (1980).[12] A rule that required each invocation of Rule 801(d)(2)(E) to be accompanied by a decision on the declarant's availability would impose a substantial burden on the entire criminal justice system.

Moreover, an unavailability rule places a significant practical burden on the prosecution. In every case involving co-conspirator statements, the prosecution would be required to identify with specificity each declarant, locate those declarants, and then endeavor to ensure their continuing availability for trial. Where declarants are incarcerated there is the burden on prison officials and marshals of transporting them to and from the courthouse, as well as the increased risk of escape. *For unincarcerated declarants the unavailability rule would require that during the sometimes lengthy period before trial the Government must endeavor to be aware of the whereabouts of the declarant or run the risk of a court determination that its efforts to produce the declarant did not satisfy the test of "good faith."* See *Ohio v. Roberts,* 448 U.S., at 74–77, 100 S.Ct., at 2543–45; *id.,* at 77–82, 100 S.Ct., at 2545–47 (BRENNAN, J., dissenting); see also *United States v. Ordonez,* 737 F.2d 793, 802 (CA9 1984).[13]

An unavailability rule would impose all of these burdens even if neither the prosecution nor the defense wished to examine the declarant at trial. Any marginal protection to the defendant by forcing the government to call as witnesses those co-conspirator declarants who are available, willing to testify, hostile to the defense and yet not already subpoenaed by the prosecution, when the defendant himself can call and cross-examine such declarants, cannot support an unavailability rule. We hold

today that the Confrontation Clause does not embody such a rule.

106 S.Ct. at 1128–29 (footnotes omitted) (emphasis added).

■ Accordingly, the Commonwealth in the case before us was not required to show that appellee's co-conspirator was unavailable to testify, and thus, appellee's Sixth Amendment right to confront the witnesses against him was not violated.

■ With regard to the second issue in this case, which issue was raised by appellee, i.e., whether a defendant has a reasonable expectation of privacy with regard to his parent's search of the parent's residence in which the defendant lives for a murder weapon belonging to that parent, the trial court and Superior Court exhaustively combed the record to determine whether the suppression court properly found that appellee did not have a reasonable expectation of privacy in his bedroom closet. Although "no single factor" is determinative of this issue, *see Rakas v. Illinois,* 439 U.S. 128, 152, 99 S.Ct. 421, 435, 58 L.Ed.2d 387 (1978), reh. den., 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979), we find that the trial court and Superior Court, in examining all the surrounding circumstances, properly affirmed the suppression court in that the murder weapon belonged to appellee's mother and she had a right to search for *her* property *anywhere* in her home. It is a basic tenet of property law that an owner of property in the possession of a bailee may follow his or her property wherever it may be found and reclaim it with or without the bailee's knowledge or consent. Appellee's mother was acting as a property owner when she searched for her revolver in her home. Appellee did not have a legitimate expectation of privacy in any area in which his mother's revolver was located, with respect to a search by her for her property.

Therefore, we reverse the order of Superior Court and reinstate the judgment of sentence imposed by the trial court.

FLAHERTY, J., filed a concurring opinion in which NIX, C.J., and ZAPPALA, J., joined.

FLAHERTY, Justice, concurring.

In my view, the majority has accurately applied federal law to resolve a question raised under the Sixth Amendment of the Constitution of the United States regarding the unavailability of declarants as a prerequisite to admission of out-of-court declarations of a co-conspirator. I write separately only to emphasize that the confrontation issue before us has not been raised in the context of state constitutional protection. The reliability of statements of a co-conspirator is open to some question, 4 Wigmore, *Evidence*, § 1080a (Chadbourn rev. 1972), and I await the proper case where the question may be fully explored as a matter of state law.

NIX, C.J., and ZAPPALA, J., join this opinion.