594 A.2d 281

COMMONWEALTH of Pennsylvania, Appellee,

v.

Paul LUDWIG, Appellant.

Supreme Court of Pennsylvania.

Argued May 3, 1989.

Resubmitted Jan. 8, 1991.

Decided May 10, 1991.

William K. Sayer, Public Defender, for appellant.

John W. Packel, Chief Dep. Public Defender, Leonard N. Sosnou, Philadelphia, for amicus curiae Defenders' Ass'n. of Philadelphia.

E. David Christine, Asst. Dist. Atty., for appellee.

Gaele McLaughlin, Deputy Dist. Atty., Marianne Cox, Philadelphia, for amicus curiae Dist. Atty. Office of Philadelphia.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

OPINION

ZAPPALA, Justice.

■ We granted review in this case and the companion case, *Commonwealth v. Lohman*, 527 Pa. 492, 594 A.2d 291, to determine whether the use of closed circuit television testimony by an alleged child victim violates the confrontation clauses of the United States and Pennsylvania Constitutions.[1] We hold that the confrontation clause of the Pennsylvania Constitution does not permit such infringement of a defendant's constitutional right to meet a witness face to face. The use of closed circuit television to transmit the testimony of the witness in this case violates the constitutional protection given to the defendant under Article I, § 9 of the Pennsylvania Constitution. Consequently, we reverse the Order of the Superior Court upholding appellant's conviction and sentence.[2]

On August 9, 1984, appellant was charged with rape, involuntary deviate sexual intercourse, incest, indecent assault, corrupting the morals of a minor, and endangering the welfare of children. The alleged victim of these crimes was appellant's five year old daughter. At the preliminary hearing, the victim testified that she did not remember what happened with appellant. The victim was unresponsive to further questioning, and the Commonwealth requested a continuance so that it could prepare a petition to the court seeking to use videotaped testimony at the preliminary

1. Because we hold that the procedure employed here was repugnant to our State Constitution, it is unnecessary to address the Federal Constitutional issue raised.

   However, we are cognizant that recently the United States Supreme Court addressed this same issue under the Sixth Amendment of the United States Constitution and held that the confrontation clause of the Sixth Amendment did not require "face to face" confrontation. *See Maryland v. Craig*, — U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). For the reasons set forth hereinafter we decline to follow the United States Supreme Court on this issue.

2. After the trial in this case, the General Assembly adopted a statute authorizing the closed circuit television testimony upon good cause shown. 42 Pa.C.S. § 5985(a). The constitutionality of that provision is not at issue here.

hearing. The petition was filed by the Commonwealth, and a hearing held. At the hearing, the Commonwealth presented testimony of a psychologist to the effect that the victim had undergone "emotional freezing" at the preliminary hearing and that the condition could occur again. The psychologist also testified that the victim had become withdrawn following the incident, but was now making psychological progress. The psychologist was concerned that the progress might be impaired if the child was forced to testify in court in the physical presence of her father.

The court granted the Commonwealth's petition to the extent that it allowed the child to testify by way of closed circuit television. At the second preliminary hearing, the alleged victim did testify on closed circuit television and the evidence was deemed sufficient to hold the appellant for trial. Notwithstanding appellant's objection, the trial court allowed the same closed circuit television procedures to be employed during the trial itself.

A jury trial began on March 7, 1985. The child testified at the trial via closed circuit television from another room. The child's foster mother was permitted to sit next to the child while the child testified. Also in the room where the child was located was the video camera operator. The courtroom where the judge, prosecutor, defense counsel, appellant and jury were located, was linked to the child by microphone. Although the child could not see the people in the courtroom, she could hear them and respond to their questions.

Following the trial, appellant was convicted of all charges. Appeal was taken to the Superior Court, and that court, sitting en banc, affirmed the judgment of sentence. In so doing, that Court employed a balancing test weighing the welfare of the child against the appellant's right to confrontation. Finding that protection of the child's welfare outweighed the restriction imposed upon the appellant's constitutional right, the Superior Court affirmed the closed circuit television procedure used by the trial court. Because we disagree with the lower courts' resolution of

this matter and their use of a balancing test under these facts, we must reverse.

Article I, § 9 of our state constitution guarantees an accused the right to meet his accusers:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusations against him, to meet the witnesses *face to face* ... (emphasis added)

This language is unlike its federal counter-part, the Sixth Amendment, which provides that a defendant in a criminal case "shall enjoy the right ... to be confronted with the witnesses against him."

In *Maryland v. Craig, supra,* the United States Supreme Court was presented with a challenge to a Maryland statute which permitted closed circuit testimony if a judge determined that the child victim's testimony in the courtroom would result in serious emotional distress and the child's inability to communicate. The trial court rejected the defendant's objection to the procedure as violative of the confrontation clause of the Sixth Amendment to the United States Constitution. The Maryland Court of Appeals reversed, holding that the State did not present sufficient evidence to meet the requirements set forth in *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The United States Supreme Court reversed in a five to four decision.

Writing for the majority, Justice O'Connor held that in *Coy v. Iowa, supra,* the Court did construe the confrontation clause as guaranteeing the defendant a face to face meeting with witnesses. Since there had been no finding that the particular child witness needed special protection, no reason existed for disallowing face to face confrontation. However, the Court specifically reserved the issue of whether the confrontation clause guarantees an *absolute* right to a face to face meeting.

Reviewing federal case law, the majority held that the purpose of the confrontation clause was to insure that

witnesses give testimony under oath, submit to cross-examination and permit observations of witness's demeanor to assist in the assessment of credibility. Thus, federal case law reflects a *preference* for face to face confrontation, not an absolute guarantee. However, a face to face confrontation may only be dispensed of where denial is necessary to further an important public policy and where the reliability of the testimony is otherwise assured. The Court concluded that a state's interest in the physical and psychological well being of child abuse victims may be sufficiently important to outweigh face to face confrontation.

In a stinging dissent, Justice Scalia, joined in by Justices Brennan, Marshall and Stevens, chastised the majority for applying an interest balancing analysis when the text of the Constitution does not permit it. The Defendant was not requesting an expansive interpretation of the scope of the Sixth Amendment but rather a strict adherence to its words. When a Constitutional guarantee is clear and explicit, as in this instance, an interest balancing analysis is the wrong approach. The confrontation clause does not guarantee reliable evidence but rather it guarantees specific trial procedures that were thought to assure reliable evidence. In effect, the majority subordinated an explicit constitutional protection to "current favored public policy."

Unlike the Sixth Amendment to the United States Constitution, Article 1, Section 9 of the Pennsylvania Constitution specifically provides for a "face to face" confrontation. We have long held that in interpreting our Constitution we are not bound by the United States Supreme Court's interpretation of similar federal constitutional provisions. *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991); *Commonwealth v. Melilli*, 521 Pa. 405, 555 A.2d 1254 (1989); *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983).

In *Commonwealth v. Sell, supra,* 504 Pa. at 49, 470 A.2d at 459, we embraced the admonitions of Justice Brennan of the United States Supreme Court:

> [T]he decisions of the Court are not, and should not be, dispositive of questions regarding rights guaranteed by counter-part provisions of State Law. Accordingly, such decisions are not mechanical applicable to state law issues, and state court judges and the members of the bar seriously err if they so treat them. Rather, state court judges, and also practitioners, do well to scrutinize constitutional decisions by federal courts, for only if they are found to be logically persuasive and well-reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, may they properly claim persuasive weight as guide posts when interpreting counter-part state guarantees.

We then refused to adopt the United States Supreme Court's abolition of "automatic standing" under the Fourth Amendment of the United States Constitution reaffirming our holding in *Commonwealth v. Tate,* 495 Pa. 158, 169, 432 A.2d 1382, 1387 (1981) that the:

> State may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the federal constitution, and that the rights so guaranteed may be more expansive than their federal counter-parts (Citations omitted).

Most recently, in *Commonwealth v. Edmunds, supra,* this Court was again requested to blindly adopt federal jurisprudence to support a "good faith" exception to the exclusionary rule as articulated by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). There, after an extensive review of the history of Article 1, Section 8, our precedents and policy considerations, we determined that adoption of federal jurisprudence was unwarranted.

Unlike its federal counter-part, Article 1, Section 9, of the Pennsylvania Constitution does not reflect a "preference" but clearly, emphatically and unambiguously requires a "face to face" confrontation. This distinction alone would require that we decline to adopt the United States Supreme Court's analysis and reasoning in *Maryland v. Craig.*

However, in addition, we have our own case law which mandates a "face to face" confrontation.

In *Commonwealth v. Russo*, 388 Pa. 462, 470–471, 131 A.2d 83, 88 (1957) we addressed the "face to face" requirement of Article I, § 9 of our Constitution, stating:

Many people possess the trait of being loose tongued or willing to say something behind a person's back that they dare not or cannot truthfully say to his face or under oath in a courtroom. It was probably for this reason, as well as to give the accused the right to cross-examine his accusers and thereby enable the jury to better determine the credibility of the Commonwealth's witnesses and the strength and truth of its case, that this important added protection was given to every person accused of crime. We have no right to disregard or (unintentionally) erode or distort any provision of the constitution, especially where, as here, its plain and simple language make its meaning unmistakably clear; indeed, because of the times in which we live we have a higher duty than ever before to zealously protect and safeguard the constitution.

Although we were quite emphatic about the importance of this right, no right is absolute. Indeed, the right to confront an accuser is not without exception. In *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977), we permitted the prosecution to use preliminary hearing testimony of a witness at trial when that witness was unavailable. In *Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350 (1977), the prosecutor was permitted to use a videotape deposition of a witness unavailable for trial. In both instances, the original testimony was given in the presence of the defendant with the defendant having the opportunity to face and cross-examine his accuser. However, in each instance, the witnesses subjective reaction to testifying in the presence of the accused were not a consideration.

Although we have recognized exceptions to the right to confront a witness, the policy reasons underlying those decisions are absent in this case. The witness in this case was neither unavailable nor subjected to cross-examination

during prior testimony given in the presence of the accused. In fact, the trial judge instructed the jury that the victim was totally unaware of the existence of the trial itself.

> We want her [the child] to be as relaxed and casual and normal as possible and she doesn't really know that you are here in this setting, she doesn't really understand that this is all actually a trial, it probably has little significance to her.

Having diluted the significance of her testimony to that extent, it is questionable whether the victim would be testifying under the proper aura.

While we have recognized exceptions to the constitutional right of confrontation, we have done so only in those instances in which the accused has already had the opportunity to confront the witnesses against him face to face. We were satisfied that in those limited instances, the constitutional right to confront the witness had been afforded to the accused. Those decisions cannot be interpreted to permit restrictions on face to face confrontation where the right to confront the witness has *never* been afforded to the accused.

■ We are cognizant of society's interest in protecting victims of sexual abuse. However, that interest cannot be preeminent over the accused's constitutional right to confront the witnesses against him face to face. The record in this case does not disclose any conduct by the appellant during the proceedings that would give rise to the need to isolate the witness. The subjective fears of the witness, without more, are insufficient to restrict this important constitutional right. Since the trial court relied exclusively upon these fears, its actions cannot be affirmed. The appellant is entitled to face his accusers and the failure to protect that right was error. The appellant is therefore entitled to a new trial during which time the victim must testify in the courtroom before the judge, jury and appellant.

The Order of the Superior Court affirming the Order of the Court of Common Pleas of Monroe County is reversed.[3]

McDERMOTT, J., files a concurring and dissenting opinion.

NIX, C.J., files a dissenting opinion in which FLAHERTY, J., joins.

FLAHERTY, J., files a dissenting opinion in which NIX, C.J., joins.

McDERMOTT, Justice, concurring and dissenting.

I join the majority in these cases because counsel was separated from the appellants and the appellants from the jury with no means of communication between them except telephone. I am not prepared to hold that reasonable restrictions cannot be imposed in cases to free the testimony of children from the possible intimidating presence of their alleged molester. *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

NIX, Chief Justice, dissenting.

I am in complete accord with the views expressed in this matter by Mr. Justice Flaherty writing in dissent and join that opinion. Although not expressly stated, the federal constitutional provision clearly guarantees a face-to-face confrontation; notwithstanding, it does not graphically express that protection by the use of the phrase, "face-to-face," as does the Pennsylvania Constitution. Moreover, the attempt by the majority to latch upon this stylistic difference in the two provisions as a basis to support the

3. The dissenting opinion has characterized those accused of crimes such as the one before us as "miscreant[s] [who] abuse very young children" and warns that a "craven sex offender who limits his depredations to the very young may thereby escape the reach of the criminal law." In an uncharacteristic attack on those accused of such heinous crimes, the writer apparently fails to remember that under our system of justice, an accused is innocent until and unless the jury has spoken to the contrary. While one may abhor the crime, one must not condemn the person accused of that crime, unless the accused is, in fact, adjudged guilty.

contention that our state constitutional provision provides an absolute right of confrontation is not only superficial but is indeed demonstrably incorrect.

The Sixth Amendment to the United States Constitution specifically mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S.C.A. Const.Amend. VI. The United States Supreme Court has noted that both a literal interpretation of this language and reference to its historical origins yield the conclusion that the Confrontation Clause requires face-to-face confrontation. *Maryland v. Craig,* —— U.S. ——, ——, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666, 677 (1990). There has never been any doubt that the right guaranteed is that which enables a criminal defendant to directly face his accusers in front of a fact-finding body. *See id. See also Idaho v. Wright,* —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *Perry v. Leeke,* 488 U.S. 272 (1989); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Illinois v. Allen,* 397 U.S. 337 (1970); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). The absence of the specific words, "face-to-face," has not been a significant obstacle to this interpretation. The Supreme Court has stated that the clause envisions

> a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face-to-face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States, supra,* at 242–243, 15 S.Ct. at 339–340. Thus even in absence of the explicit language the right to face-to-face confrontation has been vigorously defended. Nevertheless, instances have been recognized where competing interests, "if closely examined," have war-

ranted dispensing with confrontation at trial. *Ohio v. Roberts, supra,* 448 U.S. at 64, 100 S.Ct. at 2538. As the Court noted in *Mattox, supra,* "general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case." *Mattox,* 156 U.S. at 243, 15 S.Ct. at 340. This approach led the Court to uphold as constitutional a Maryland statute which establishes a closed-circuit procedure identical to that used in the instant matter. *See Maryland v. Craig, supra.* Thus the issue herein presented would not be cognizable under the federal constitution.

Clearly, the federal constitution reflects no less strong a preference for face-to-face confrontation than does our state constitution. The presence of the words "face-to-face" in our state's confrontation clause is merely a stylistic difference; the substantive right protected is identical to that found in the Sixth Amendment.[1] Indeed, our analysis of the state's confrontation clause has mirrored that employed in interpreting the federal constitution. While recognizing the accused's right to confrontation under that provision, we nevertheless have carved out exceptions in certain circumstances, recognizing that the right is not

---

**1.** Of interest is the discussion of the Supreme Court of Kentucky, whose state constitution also guarantees the defendant the right to meet the witnesses "face-to-face." In *Commonwealth v. Willis,* 716 S.W.2d 224 (Ky.1986), the Court said:

*There is no constitutional right to eyeball to eyeball confrontation.* The choice of the words "face to face" may have resulted from an inability to foresee technological developments permitting cross-examination and confrontation without physical presence.

In the Eighteenth and Nineteenth Centuries, live testimony was the only way that a jury could observe the demeanor of a witness. The use of video tapes does not represent a significant departure from that tradition because the goal of providing a view of the witness's demeanor to the jury is still achieved.

*The intervention of a video screen or a one-way mirror does not infringe upon the defendant's right to confrontation. There is a difference between confrontation and intimidation.* It would be unconstitutional for the government to take evidence in secret and outside of the presence of the defendant, but there is no right to eyeball to eyeball presence.

*Id.* at 230–231. (Emphasis added.)

absolute. *See Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974). The majority's assertion that face-to-face confrontation is mandatory in all circumstances, rather than just preferential, see op. at 478–479, is undercut by its recognition of those exceptions previously adopted. If the concern for face-to-face confrontation were as "emphatic" and unyielding as the majority seems to suggest, any hearsay exception would run afoul of the state constitution. *See Ohio v. Roberts, supra,* 448 U.S. at 63, 100 S.Ct. at 2537. Even the majority concedes that this result is not intended. Op. at 479.

The majority's insistence that the policies underlying the adoption of hearsay exceptions are not present in the instant case is plainly ludicrous. The policy furthered by the various hearsay exceptions is that of saving the prosecution's case when a live witness is, for whatever reason, unavailable to testify. *See generally* McCormick on Evidence, §§ 246, 253 (3d. Ed.) This policy certainly cannot be accorded greater importance than that of protecting the psychological well-being of a minor of tender years who claims to have been abused. Clearly the Commonwealth has an interest in the healthy development of its children, an interest that provides ample justification for the relatively minor curtailment of defendant's right to confrontation. Moreover, any implicit suggestion by the majority that the testimony in this case did not carry the "indicia of reliability," *see Ohio v. Roberts, supra,* at 65, 100 S.Ct. at 2538–39, to justify an exception to the confrontation requirement must be rejected in light of the fact that the testimony, with the sole exception of the use of the closed-circuit equipment, was given in exactly the same manner as if the witness had been in the courtroom. The defendant was able to fully cross-examine the witness; it therefore can be argued that the testimony of the child bore even greater "guarantees of trustworthiness," *see id.* at 66, 100 S.Ct. at 2539, than would the statement of, for example, a co-conspirator or a decedent whose statement has not been tested through the adversarial process.

In view of our traditionally flexible approach to confrontation clause problems, I would embrace the holding of the United States Supreme Court in *Maryland v. Craig, supra,* as being consistent with our prior interpretation of the right to confrontation under both the federal and state constitutions. The procedure sanctioned in *Craig* permits the closed-circuit testimony of a child witness upon a finding by the judge that live testimony by the child will result in "the child suffering severe emotional distress, such that the child cannot reasonably communicate." *Craig, Id.* —— U.S. at ——, n. 1, 110 S.Ct. at 3161, n. 1, 111 L.Ed.2d at 675 n. 1. Under the Maryland statute, the child's testimony is given in front of the attorneys for both sides and any person who contributes to the well-being of the child, with the testimony transmitted via closed-circuit television into the courtroom, where the defendant and the judge are to be present. *Id.* All other elements of the confrontation right are preserved. *Id.* at ——, 110 S.Ct. at 3166–67, 111 L.Ed.2d at 682. This procedure is identical to that employed in the instant case; indeed, the same procedure has been codified by our state legislature. 42 Pa.C.S. § 5985(a).[2]

The Supreme Court found that the use of the one-way closed-circuit procedure, where necessary to further an im-

---

**2.** § 5985. Testimony by closed-circuit television

(a) Closed-circuit television.—The child victim or material witness, through his parent or guardian, or, where applicable, the child's advocate or the attorney for the Commonwealth may move, for good cause shown, that the testimony of a child be taken in a room other than the courtroom and televised by closed-circuit equipment to be viewed; by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child in person but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child shall proceed in the same manner as permitted at trial.

portant state interest, did not impinge upon the purposes of the Confrontation Clause. *Maryland v. Craig, supra,* at ——, 110 S.Ct. at 3166–67, 111 L.Ed.2d at 682. In ascertaining whether an important state interest was furthered, the Court noted that the state's compelling interest in the physical and psychological well-being of child abuse victims may be sufficient to outweigh, in some cases, a defendant's right to face-to-face confrontation. *Id.*[3] Accordingly, the Court stated the following:

> [W]e hold that, if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

> The requisite finding of necessity must of course be a case-specific one: the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. See *Globe Newspaper Co. [v. Superior Court],* 457 U.S. [596], at 608–609 [102 S.Ct. 2613, at 2620–2622, 73 L.Ed.2d 248 (1982)] (compelling interest in protecting child victims does not justify a *mandatory* trial closure rule); *Coy,* 487 U.S., at 1021 [108 S.Ct. at 2803]; *id.,* at 1025 [108 S.Ct. at 2805] (concurring opinion); see also *Hochheiser v. Superior Court,* 161 Cal.App.3d 777, 793, 208 Cal.Rptr. 273, 283 (1984). The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. See, *e.g., State v. Wilhite,* 160 Ariz. 228, 772 P.2d 582 (1989); *State v. Bonello,* 210 Conn. 51, 554 A.2d 277 (1989); *State v. Davidson,* 764 S.W.2d 731 (Mo.App.1989); *Commonwealth v. Ludwig,* 366 Pa.Super. 361, 531 A.2d 459 (1987).

**3.** Significantly, Pennsylvania was among those states whose statutes were cited as evidence of the widespread belief in the importance of protecting child abuse victims. *See Maryland v. Craig,* —— U.S. ——, ——, n. 2, 110 S.Ct. 31572167–68 n. 2, 111 L.Ed.2d 666, 683 n. 2 (1990).

Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than "mere nervousness or excitement or some reluctance to testify," *Wildermuth [v. State]*, 310 Md. [496], at 524, 530 A.2d [275], at 289 (1987) ]; see also *State v. Mannion,* 19 Utah 505, 511–512, 57 P. 542, 543–544 (1899).

*Id.* — U.S. at —, 110 S.Ct. at 3169, 111 L.Ed.2d at 685.

In the instant case the evidence is more than sufficient to justify the finding of necessity. When interviewed an hour before the preliminary hearing the five-year old victim was able to describe in detail the sexual acts which had been committed upon her by her father, yet at the preliminary hearing she was unable to remember or respond to any questions relating to the incident. The victim was subsequently examined by Dr. Chupella, who testified that she had suffered "emotional freezing" in the presence of her father, and that she might be permanently traumatized if she were required again to testify in the physical presence of her father. *Commonwealth v. Ludwig,* 366 Pa.Super. 361, 371, 531, A.2d 459, 464 (1987). This evidence meets the standards set forth in *Craig,* such that a finding of necessity could be made which would justify use of the closed-circuit procedure.

Accordingly, I would affirm the order of the Superior Court.

FLAHERTY, J., joins in this dissenting opinion.

FLAHERTY, Justice, dissenting.

I cannot accept the majority's conclusion that the Pennsylvania Constitution prohibits the procedure which was utilized in the trial of this case.

The reasoning of the United States Supreme Court in *Maryland v. Craig,* — U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), though interpreting the federal Constitution, is instructive in analyzing the issue under the Pennsylvania Constitution as well, and suggests that the latter would also permit the use of closed-circuit television. In addition, there are flaws in the majority's analysis of Pennsylvania precedents permitting the admission of out-of-court statements under exceptions to the hearsay rule. Such exceptions demonstrate that a defendant's right to an in-court, face-to-face confrontation with his accusers is *not* absolute despite the Pennsylvania Constitution's use of the words "face to face." The societal need for using closed-circuit television during some trials is evident, and has been recognized by the legislature as the public policy of this Commonwealth. I fear that the decision of the majority is a virtual license for any miscreant to abuse very young children who, predictably, will be unable to accuse the criminal to his face. A craven sex offender who limits his depredations to the very young may thereby escape the reach of the criminal law. Such a repugnant result is, I believe, unnecessary under our Constitution.

In analytical terms, I believe the confrontation clauses in the federal and state Constitutions are identical, and that both permit use of closed-circuit television procedures. The United States Supreme Court opinion in *Maryland v. Craig, supra,* is helpful in this case and the rationale is equally pertinent to an analysis under the Pennsylvania Constitution. The federal Supreme Court stated in *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), that the federal Constitution, like Pennsylvania's Constitution, guarantees a face-to-face confrontation, though the federal Constitution does not include the words "face to face." Without abandoning that interpretation, the Court in *Maryland*

*v. Craig* held that the right to face-to-face confrontation is not absolute, but will in some circumstances give way to more imperative ends. In this respect, the state and federal Constitutions are indistinguishable.

The majority criticizes the Superior Court for using a balancing test, stating that the Pennsylvania Constitution "clearly, emphatically and unambiguously requires a 'face to face' confrontation," but inconsistently concedes, as it must, that "no right is absolute" and that "the right to confront a accuser is not without exception." The obvious exceptions are the admission of hearsay testimony under a variety of exceptions to the rule against hearsay; however, the majority incorrectly concludes that all such exceptions under Pennsylvania law involve prior testimony under oath in a judicial proceeding in the presence of the defendant where the defendant had been able to face and cross-examine his accuser. In fact, this Court has recognized the admissibility of dying declarations, excited utterances, and statements of co-conspirators as exceptions to the rule against hearsay even when there has been no prior opportunity for cross-examination and where the prior statements were not made under oath. *See, e.g., Commonwealth v. Pinkins*, 514 Pa. 418, 425–28, 525 A.2d 1189, 1192–93 (1987) (statements of co-conspirators admissible, under what is apparently the most frequently used exception to the hearsay rule); *Commonwealthy v. Cooley*, 465 Pa. 35, 40–42, 348 A.2d 103, 106–07 (1975) (hearsay statements admissible under the res gestae exception for spontaneous or excited utterance); *Commonwealth v. Speller*, 445 Pa. 32, 34–35, 282 A.2d 26, 28 (1971) (hearsay statement admissible as a dying declaration). None of the foregoing examples involves statements made in court or under oath or under circumstances allowing an opportunity for cross-examination.

But even if the majority were correct in concluding that the Pennsylvania Constitution only permits exceptions to the literal "face-to-face" requirement when the right of cross-examination is untrammeled, such a conclusion would

490

not act to vitiate the procedure employed during appellant's trial.  His ability to cross-examine the victim was completely unimpaired.  Thus it can be said that the essence of the right of confrontation was protected.

The procedure employed in appellant's trial, like that in the Maryland case, preserved all essential elements of confrontation which the Constitution seeks to protect.  The procedure required the witness to be competent to testify and to testify under oath, the defendant retained full opportunity for contemporaneous cross-examination, and the judge, jury, and defendant were able to view the demeanor and body of the witness as she testified.  This assured that the testimony was "both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony."  *Maryland v. Craig*, —— U.S. at ——, 110 S.Ct. at 3166, 111 L.Ed.2d at 682.  *See Commonwealth v. Smith*, 523 Pa. 577, 593, 568 A.2d 600, 608 (1989) ("The exceptions to the hearsay rule are premised upon circumstances surrounding the making of the utterances which would assure the reliability of the contents.")  In view of these considerations, to distinguish between the federal and state Constitutions is sophistic.

Finally, the statute which now permits the television procedure employed in appellant's trial[1] clearly evinces the

---

1.  Although 42 Pa.C.S. § 5985(a) was enacted subsequent to the trial of this case, it appears to permit the procedure which was utilized during the trial.  The statute provides:

    **§ 5985.  Testimony by closed-circuit television**

    **(a) Closed-circuit television.**—The child victim or material witness, through his parent or guardian, or, where applicable, the child's advocate or the attorney for the Commonwealth may move, for good cause shown, that the testimony of a child be taken in a room other than the courtroom and televised by closed-circuit equipment to be viewed by the court and the finder of fact in the proceeding.  Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony.  The court shall permit the defendant to observe and hear the testimony of the child in person but shall ensure that the child cannot hear or

judgment of the legislature that public policy considerations mandate this minor limitation on the right to have a literal "face-to-face" confrontation as guaranteed by the Constitution. Without elaborating, we refer to the facts recounted by the federal Supreme Court in *Coy v. Iowa, supra.* The now well-documented, widespread incidence of perverted adults preying upon defenseless children has caused a need to provide realistic protection for the children in our society. Between 1976 and 1985 there was a threefold increase in reported child abuse, so that in 1985, nationwide, almost two million cases were reported. "The prosecution of these child sex-abuse cases poses substantial difficulties because of the emotional trauma frequently suffered by child witnesses who must testify about the sexual assaults they suffered." *Id.,* 487 U.S. at 1031, 108 S.Ct. at 2808, 101 L.Ed.2d at 873–74 (Blackmun, J., dissenting). This situation has led to a statement of public policy by our general assembly that children who are material witnesses to or victims of crimes need "additional consideration and different treatment from that of adults" and "additional rights and protections during their involvement with the criminal justice system." 42 Pa.C.S. § 5981. I wholeheartedly agree with the legislature that it is a matter of important public policy for the state, as *parens patriae,* to protect such children who, due to their youth, labor under a disability when called upon to testify regarding sexual abuse. I regard this policy to be sufficiently imperative to justify the procedure used during appellant's trial, despite the Constitution's guarantee of face-to-face confrontation with his accusers. As I observed earlier, the opposite interpretation leads to de facto license of sexual abuse of the very youngest children, who are obviously most in need of protection.

> see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child shall proceed in the same manner as permitted at trial.

492

For these reasons, I dissent, and would affirm the order of the Superior Court upholding appellant's judgment of sentence.

NIX, C.J., joins in this dissenting opinion.