636 A.2d 142

**R., Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE and Montgomery County Office of Children and Youth, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1993.

Decided Jan. 4, 1994.

Jean B. Green, Norristown, for "R."

Kathleen Grogan, Harrisburg, for D.P.W.

Stephen P. Imms, Jr., Ambler, for Mtgy. Co. Office of Children & Youth.

Stephen T. O'Neill, Guard. Ad Litem.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

In this appeal, Appellant R. raises several constitutional challenges to the procedures that were followed when he was denied his request to expunge his record of a report indicating that there was substantial evidence showing that he committed child abuse. For the reasons that follow, we reject his constitutional claims.

This case arose out of the following set of facts. In January 1987, the Montgomery County Office of Children and Youth received a report of suspected child abuse alleging that R. sexually abused his daughter. A caseworker investigated the report by interviewing the child and her mother, but R. refused to be interviewed. The caseworker also obtained a psychiatric, psychological and medical evaluation of the child. Based upon the caseworker's investigation, the Montgomery County Office of Children and Youth filed its report classifying the matter as "indicated" for child abuse.[1]

Initially, R. wrote to the Department of Public Welfare (DPW) to request an expungement of the "indicated" report.

1. An "indicated" report is one based on an administrative determination that there exists substantial evidence from medical evidence, the agency's investigation, or an admission of the accused that the child in question had been abused. 23 Pa.C.S. § 6303. A report can also be filed as "founded," in which case there has been a judicial determination that the child has been abused, or as "unfounded," in which case there has been neither a judicial nor an administrative finding of abuse. *Id.*

The DPW denied that request. Soon thereafter, R. sought relief through the statutorily provided administrative channels by filing an appeal with the DPW's Office of Hearings and Appeals.

There were five days of hearings during which the child, her then-treating psychiatrist, and the agency's consultant testified. The child gave her testimony *in camera* over R.'s objections. The first four days of hearings were presided over by Hearing Examiner John F. Liebau, while Hearing Examiner Thomas G. Devlin presided over the final day of hearings. Hearing Examiner Devlin also issued the Adjudication and Recommendation that the request for expungement be denied. That report was adopted in full by the Office of Hearings and Appeals.

A divided panel of the Commonwealth Court affirmed the Department's adjudication. Thereafter, R. sought allowance for appeal, which was granted with respect to two issues. The first is whether R. was denied due process when a hearing examiner made credibility determinations of witnesses he did not see or hear testify. The second is whether permitting his daughter to testify *in camera* denied R. any constitutional rights to confront a witness. Upon review of R.'s arguments addressing these two issues, we affirm the judgment below.

We begin by considering the first issue. Appellant argues that, because Hearing Examiner Devlin neither saw nor heard the testimony of witnesses who appeared during the first four days of hearings, he should not be permitted to decide the case and make recommendations. Appellant supports this contention by relying on *Commonwealth ex rel. Davis v. Davis*, 268 Pa.Super. 401, 408 A.2d 849 (1979). In *Davis*, the Superior Court explained that when facts, and inferences that can be drawn from them, depend on the credibility of the testifying witnesses, a decision can only be made by a *judge* before whom the witnesses appeared. *Id.* at 403, 408 A.2d at 850. However, R.'s reliance on *Davis* is misplaced because that case involved a judicial proceeding, while the instant matter involves an administrative hearing, which must comply

with a different set of standards to satisfy due process requirements.

Those standards were cogently articulated in *Peak v. Unemployment Compensation Bd. of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). In *Peak,* the Unemployment Compensation Board of Review rejected a referee's decision to award benefits to a claimant, and the claimant challenged the Board's action as a violation of due process. The claimant argued that, because the referee's decision was based on the resolution of a question of credibility, the Board, which did not hear the evidence, could not reject the referee's decision without explaining its reasons for doing so. We disagreed.

First, we emphasized that the Board, not the referee, was statutorily designated as the ultimate finder of fact. *Id.* at 276–77, 501 A.2d at 1388 (citing *Miller v. Unemployment Compensation Bd. of Review,* 45 Pa.Commw. 539, 541, 405 A.2d 1034, 1036 (1979)). We said that the Legislature could constitutionally confer this power on the Board as long as there was sufficient protection against the risk of an arbitrary decision by the Board to reverse any referee's assessment of testimonial credibility. *Id.* at 277, 501 A.2d at 1388–89 (citing *Moore v. Ross,* 687 F.2d 604 (2d Cir.1982), *cert. denied,* 459 U.S. 1115, 74 L.Ed.2d 969 (1983)). In concluding that sufficient safeguards existed to protect the claimant in *Peak,* we said that

> we perceive no due process violation in permitting the Board to reassess a referee's credibility determinations, so long as the Board is subject to judicial review on the substantial evidence test and is required to explain its decision in sufficient detail to permit meaningful appellate review.

*Id.* at 278, 501 A.2d at 1389. R. had the benefit of both safeguards in his expungement hearings.

We begin by noting that the Office of Hearings and Appeals functions as the finder of fact in expungement hearings. It was designated as such by the Secretary of the Department of Public Welfare, 55 Pa.Code § 3490.106(c), who is authorized to

appoint a designee to perform her statutorily assigned duties to find facts and decide whether to expunge an indicated report.[2]

■ Because the Office of Hearings and Appeals, not the hearing examiner, is the ultimate finder of fact in this case, it is of no moment that the hearing examiner who issued the Adjudication and Recommendation did not hear the testimony given during the first four days of hearings. The hearing examiners are assistants who are constitutionally permitted to help the agency by taking, sifting through, and analyzing evidence. *Morgan v. United States,* 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288, 1295 (1936). The critical issue is whether there are sufficient safeguards, as measured by *Peak,* to protect against arbitrary action by the Office of Hearings and Appeals.

Both conditions articulated in *Peak* for satisfying due process requirements are met here. First, as with any administrative agency adjudication, a reviewing court must determine, *inter alia,* whether substantial evidence exists to support the decision. 2 Pa.C.S. § 704. Second, the reasons the Office of Hearings and Appeals denied R.'s request to expunge his record are clear enough to permit meaningful appellate review. The Office summarily adopted the recommendation of Hearing Examiner Devlin, whose nine-page report thoroughly describes the basis for his recommendation. Therefore, we

**2.** The Legislature conferred the power to find facts and render decisions as follows:

> (c) Review of refusal of request.—If the secretary refuses the request [to amend, seal or expunge a report] or does not act within a reasonable time, but in no event later than 30 days after receipt of the request, the subject shall have the right to a hearing before the secretary or a designated agent of the secretary to determine whether the summary in the Statewide central register or the contents of any report filed pursuant to section 6313 should be amended, sealed or expunged on the grounds that it is inaccurate or that it is being maintained in a manner inconsistent with this chapter.
>
> (d) Order.—The secretary or designated agent may make any appropriate order respecting the amendment or expungement of such records to make them accurate or consistent with the requirement of this chapter.

23 Pa.C.S. § 6341(c), (d).

find that R. was not denied due process when the Office of Hearings and Appeals accepted the recommendation of a hearing examiner who presided over one of the five days during which testimony was heard.

■ Next, we consider R.'s contention that, because his daughter testified *in camera*, he was denied a constitutional right to confront a witness face-to-face. He supports this claim by relying, in part, on this Court's decisions in *Commonwealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281 (1991), and *Commonwealth v. Lohman*, 527 Pa. 492, 594 A.2d 291 (1991). However, those cases do not control the instant matter because in each one we discussed the constitutional protections that criminal defendants enjoy under Section 9 of Article I of the Pennsylvania Constitution.[3] That provision is explicitly addressed to "criminal prosecutions." However, R. was not criminally prosecuted; he had his expungement request considered in an administrative hearing. Therefore, Section 9 of Article I does not apply, and R.'s reliance on *Ludwig* and *Lohman* is misplaced.

R. also argues that, because he was not permitted to be present when his daughter testified, he was denied his rights to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Sections 1 and 11 of Article I of the Pennsylvania Constitution. However, none of these three provisions is offended by what occurred here.

We begin by considering the Fourteenth Amendment. It provides, in pertinent part, "nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. In *Matthews v.*

---

**3.** In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land....

*Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court formulated a methodology for assessing whether state action offends the Fourteenth Amendment's due process guarantees. The Court stressed that procedural due process calls for protections tailored to the demands of the particular situation, making it necessary to balance competing interests. *Id.* at 334, 96 S.Ct. at 902, 47 L.Ed.2d at 33 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). The Court identified three distinct factors that must be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail.

*Id.* at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33 (citing *Goldberg v. Kelly,* 397 U.S. 254, 263–71, 90 S.Ct. 1011, 1018–22, 25 L.Ed.2d 287 (1970)).

Before proceeding to perform the *Matthews* analysis, it will be helpful to articulate the precise nature of R.'s challenge. As an initial matter, we note that no objection is raised to the fact that a hearing occurs after an indicated report is issued. The focus of R.'s complaint is that the conduct of his expungement hearing did not conform to the requirements of due process. Procedural due process claims have generally come in one of two forms. They most frequently consist of challenges to the adequacy of the government's established procedure for imposing a deprivation.[4] The minority of cases

---

4. *See, e.g., Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (termination of employment); *Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (confinement of child in mental hospital); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (termination of utility service); *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (corporal punishment of junior high school students); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d

involve instances in which the deprivation arose out of either an official's negligent conduct or an intentional act that did not conform to an established procedure.[5] The case before us does not fall into either one of these categories because no established procedure is being challenged, nor is any official being accused of acting negligently or beyond the scope of his authority. In this case, R. raises a challenge to the manner in which his daughter testified when the established procedure does not specify the way it should be done. Pennsylvania's Administrative Agency Law, which governs the manner in which expungement hearings are conducted, 55 Pa.Code § 3490.106(d), provides that

> Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. *Reasonable examination and cross-examination shall be permitted.*

2 Pa.C.S. § 505 (emphasis added). Thus, the sole purpose of our analysis is to determine whether, acting pursuant to a non-specific requirement that reasonable examination and cross-examination be permitted, the hearing examiner allowed R.'s daughter to testify in a manner that ran afoul of the Fourteenth Amendment's due process guarantees. With this in mind, we proceed to perform the *Matthews* analysis.

First, we consider the private interests that are affected by the DPW's decision. In doing so, we are mindful that due process is required under the Fourteenth Amendment only if the state seeks to deprive a person of a life, liberty or property interest. Significantly, the existence of a liberty or

725 (1975) (suspension of students from public school); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (forfeiture of prisoner's goodtime credits); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (repossession of property); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits).

5. *See, e.g., Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (prison guard deliberately and maliciously destroys property during search of inmate's cell).

property interest is partly determined by reference to state law.

> [T]here exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and [the United States Supreme Court has] repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*Paul v. Davis*, 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405, 419 (1976) (footnote omitted).

 R. describes three ways in which he will be adversely affected. He initially claims that the information contained in his indicated report is available to numerous persons and agencies. He also says that the existence of an indicated report of child abuse may lead to the denial of employment with a public or private child care agency. Finally, he complains about the fact that information in an indicated report may be furnished in the course of the mandatory investigations of proposed adoptive parents. We will analyze each of these concerns individually to determine the extent to which they relate to interests that are entitled to due process under the Fourteenth Amendment.

R.'s contention that he may be denied a job in a child care agency stems from the requirement that, in the event he seeks employment in an occupation involving direct contact with children, the DPW must certify to the prospective employer whether an indicated report was made within the proceeding one-year period.[6] R. does not explain, nor do we perceive,

---

**6.** The relevant statutory provision reads as follows:
Information relating to prospective child-care personnel
 (a) Applicability.—This section applies to all prospective employees of child-care services, prospective foster parents, prospective adoptive parents, prospective self-employed family day-care providers and other persons seeking to provide child-care services under contract with a child-care facility or program. This section does not apply to

how a statute that operates in this way implicates a liberty or property interest recognized under Pennsylvania law. In addition, R.'s concern does not relate to either a liberty or property interest as those terms were defined by the United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In *Roth*, a state university refused to extend a teacher's one-year employment contract and offered no reasons for doing so. The teacher challenged the action as a denial of due process, and the Supreme Court rejected her claim. The Court said that the university's action did not implicate any liberty interest because the employee was free to seek another job. *Id.* at 573–74, 92 S.Ct. at 2707, 33 L.Ed.2d at 559. The same can be said here. The Legislature has not barred R. from seeking employment or being hired to a position involving direct contact with children. To that extent, no liberty interest is at stake.

Nor can we say that R. has any protectable property interest in any prospective employment opportunities.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

administrative or other support personnel unless their duties will involve direct contact with children.

(b) Information submitted by prospective employees.—Administrators of child-care services shall require applicants to submit with their applications the following information obtained within the preceding one-year period:

. . . .

(2) A certification from the department as to whether the applicant is named in the central register as the perpetrator of a founded or indicated report of child abuse. An indicated report shall not be included until the department adopts regulations specifying the manner in which the investigation required by sections 6366 (relating to continuous availability to receive reports) through 6372 (relating to protecting well-being of children detained outside home) is to be conducted.

23 Pa.C.S. § 6344(a), (b)(2).

*Id.* at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.[7] In *Roth,* the Court found that the employee did not have sufficient property interest to receive a hearing because neither his contract nor any statute or rule secured his interest in any reemployment. Similarly, here R. cites nothing that would indicate that he has a legitimate claim of entitlement to any job. Therefore, this concern does not relate to any interest entitled to due process protections.

■ We are also constrained to disregard R.'s concerns that information in an indicated report must be furnished in the event he seeks to adopt a child. As with persons seeking employment in a position involving direct contact with children, the Legislature requires that the DPW certify whether a prospective adoptive parent was named in an indicated report of child abuse during the proceeding one-year period.[8] R. does not explain, nor do we perceive how a statute that operates in this way implicates an interest recognized under Pennsylvania law. In addition, when R.'s claim is measured by the federal standard articulated in *Roth,* neither a federal liberty, nor a federal property interest is implicated. No liberty interest is implicated because the Legislature has not foreclosed the possibility that a person named in an indicated report can seek to adopt a child. *See Roth,* 408 U.S. at 573–74, 92 S.Ct. at 2707, 33 L.Ed.2d at 559. No property interest

---

7. *See also Guthrie v. Borough of Wilkinsburg,* 505 Pa. 249, 478 A.2d 1279 (1984) ("The mere theoretical effect on possible promotions or future employment prospects is too abstract to constitute a property interest.").

8. The relevant statutory provision reads as follows:
 (d) Prospective adoptive or foster parents.—With regard to prospective adoptive or prospective foster parents, the following shall apply:
 (1) In the course of causing an investigation to be made pursuant to section 2535(a) (relating to investigation), an agency or person designated by the court to conduct the investigation shall require prospective adoptive parents to submit the information set forth in subsection (b)(1) and (2) for review in accordance with this section.
 (2) In the course of approving a prospective foster parent, a foster family care agency shall require prospective foster parents to submit the information set forth in subsection (b)(1) and (2) for review by the foster family care agency in accordance with this section.
 23 Pa.C.S. § 6344(d).

is at stake because R. has no legitimate claim of entitlement to adopt a child; it is no more than an abstract desire on his part. *See id.* at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Therefore, this concern does not relate to any interests entitled to the Fourteenth Amendment's due process guarantees.

 Lastly, we examine R.'s concern that his indicated report of child abuse is available to numerous persons and agencies. The implication is that R. lives under the cloud of a stigma that threatens his reputation. The United States Supreme Court has already held that reputation is not an interest which, standing alone, is sufficient to invoke the procedural protections of the Fourteenth Amendment's due process clause. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, in Pennsylvania, reputation is an interest that is recognized and protected by our highest state law: our Constitution. Sections 1 and 11 of Article I make explicit reference to "reputation," providing the basis for this Court to regard it as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection. *Hatchard v. Westinghouse Broadcasting Co.,* 516 Pa. 184, 193, 532 A.2d 346, 350 (1987) (citing cases).

Having determined that R. has a protected interest that will be affected by his expungement hearings, we must assess the extent to which he will be deprived of that interest. Because we are dealing with R.'s reputation, our inquiry must necessarily focus on the extent to which the information contained in an indicated report is readily available and/or accessible. We are specifically concerned with the circumstances under which R.'s identity will be revealed.

We have already examined two such instances. The first would occur in the event he applies for a job involving direct contact with children. The second would occur in the event he sought to become an adoptive parent. In either case, the existence of an indicated report would be revealed solely to the prospective employer or adoption agency, whichever applies. In addition, the information would only be disclosed if

the report was issued during the twelve months prior to the time R. submitted his application for a job or adoptive child.

Indicated reports of child abuse are also recorded in a confidential statewide registry. The identity of the perpetrators of such reports is revealed in a limited set of situations.

General Rule.—Reports specified in section 6399 (relating to confidentiality of reports) shall only be made available to:

(1) An authorized official of a child protective service in the course of official duties, multidisciplinary team members assigned to the case and duly authorized persons providing services pursuant to section 6370(a) (relating to services for protection of child at home or in custody).

(2) A physician examining or treating a child or the director or a person specifically designated in writing by the director of any hospital or other medical institution where a child is being treated when the physician or the director or the designee of the director suspects the child of being an abused child.

(3) A guardian *ad litem* for the child.

(4) An authorized official or agent of the department in accordance with department regulations or in accordance with the conduct of a performance audit as authorized by section 6343 (relating to investigating performance of child protective service).

(5) A court of competent jurisdiction pursuant to a court order.

(6) A standing committee of the General Assembly, as specified in section 6384 (relating to legislative oversight).

(7) The Attorney General.

. . . .

(9) Law enforcement officials in the course of investigating cases of:

(i) Homicide, sexual abuse, sexual exploitation or serious bodily injury perpetrated by persons whether or not related to the victim.

(ii) Child abuse perpetrated by persons who are not family members.

(iii) Repeated physical injury to a child under circumstances which indicate that the child's health or welfare is harmed or threatened.

(10) Law enforcement officials who shall receive reports of abuse in which the initial review gives evidence that the abuse is homicide, sexual abuse, sexual exploitation or serious bodily injury perpetrated by persons whether or not related to the victim, or child abuse perpetrated by persons who are not family members. Reports referred to law enforcement officials shall be on forms provided by and according to regulations promulgated by the department.

(11) County commissioners, to whom the department shall forward specific files upon request, for review when investigating the competence of county children and youth employees.

. . . .

23 Pa.C.S. § 6340(a). It is apparent from these legislatively imposed controls that R. is not being stigmatized in the eyes of the general public. To the contrary, his identity is disclosed to a small number of persons in a very narrow range of situations with the understanding that it will not be revealed to any unauthorized individuals. Therefore, any adverse effects on his reputation are very limited.

Next, we consider the risk of an erroneous deprivation of R.'s interest through the use of the procedures employed at his expungement hearing, and the probable value, if any, of additional safeguards. R. restricts his challenge to the fact that his daughter was permitted to testify *in camera*. He contends that this violated his constitutionally protected right to confront and cross-examine her because he was not able to see or hear her testify or to communicate with his attorney. However, we find little fault with the procedures used to elicit testimony from his daughter.

In making our assessment, we are mindful of the nature of the inquiry being conducted at an expungement hearing and

the role that cross-examination plays in it. An expungement hearing is devoted to determining whether information in an indicated report is either inaccurate or is being maintained in a manner inconsistent with the Child Protective Services Act. 23 Pa.C.S. § 6341(c), (d). This factual determination will partly depend on the credibility and veracity of testimonial evidence. Cross-examination plays a crucial role in this regard because it enables the accused to expose testimonial weaknesses which would cause a fact finder to discount the weight of the testimony of an adverse witness. *Goldberg v. Kelly,* 397 U.S. 254, 270, 90 S.Ct. 1011, 25 L.Ed.2d 287, 300 (1970) (quoting *Greene v. McElroy,* 360 U.S. 474, 496–97, 79 S.Ct. 1400, 3 L.Ed.2d 1377, 1390 (1959)). However, cross-examination can take a variety of forms. The primary concern is that the accused be apprised of the evidence used to prove the government's case so that he may have an opportunity to challenge it. *Id.*

Our review of the record discloses that R. was afforded these basic guarantees. When R.'s daughter testified *in camera,* she did so in the presence of R.'s attorney. After she finished testifying on direct examination, a transcript of her testimony was provided for R. and his attorney to review together in preparation for cross-examination. This procedure allowed R. to know precisely what evidence the government was using to prove its case, and gave R. an opportunity to challenge that evidence.

As for R.'s contention that he was denied an opportunity to communicate with his attorney, R. calls our attention to one point in the proceedings. The record shows that after the cross-examination of R.'s daughter was complete, R.'s attorney was refused a request to review his notes with his client. No reason is offered for this action, nor do we perceive of any. However, in view of the extent to which R. was otherwise able to communicate with his attorney, we conclude that this isolated incident had a very limited impact on the risk that he would be erroneously denied his request to expunge his record of the indicated report.

R.'s claim that he should have been able to see and hear his daughter as she testified is based on two cases in which the United States Supreme Court said that due process often requires confrontation and cross-examination of adverse witnesses. *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 300 (1970) (citing cases); *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 103, 83 S.Ct. 1175, 1180, 10 L.Ed.2d 224, 229 (1963). However, neither of those two cases specify the manner in which a "confrontation" must occur. Indeed, by indicating that confrontation and cross-examination are not always required, they reaffirm the basic principle that due process calls for procedures tailored to meet the demands of the particular situation. *Matthews*, 424 U.S. at 334, 96 S.Ct. at 902, 47 L.Ed.2d at 33 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

The relevant inquiry, according to *Matthews*, is whether allowing R. to see and hear his daughter as she testified would have reduced the risk that he would suffer an erroneous deprivation of his reputational interest. The answer to this question must take into account the two ways in which the procedure could be implemented. One option is to use a closed circuit television to permit the child to testify outside the presence of the accused. However, this would not offer safeguards any greater than those provided by the procedure employed here. The only material difference with closed circuit television is that a video camera operator would take the place of the stenographer. There is no reason to think that this would have an effect on what the child said or how credibly she said it. As a result, the factual determination would be no more reliable than it already is.

The second option would be for the child to testify in the presence of the accused. It is generally believed that a witness is less likely to lie when he must testify while facing the accused. *E.g., Coy v. Iowa*, 487 U.S. 1012, 1019, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857, 866 (1988). However, that is not necessarily the case when the witness is a child testifying that someone abused him or her. Such an experience could cause

significant emotional distress in the child witness and actually disserves the truth-seeking process. *Maryland v. Craig*, 497 U.S. 836, 857, 110 S.Ct. 3157, 3170, 111 L.Ed.2d 666, 686 (1990) (citing *Coy*, 487 U.S. at 1032, 108 S.Ct. at 2808, 101 L.Ed.2d 857 (Blackmun, J., dissenting)). Thus, it is debatable whether the procedure employed here created a risk that R. would suffer an erroneous deprivation. This left the ultimate decision in the hands of the hearing examiner, who was in the best position to determine whether to act on an assertion by the guardian *ad litem* that the child was apprehensive about having to confront her father.

The last factor to consider is the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail. The government has stated its interests in the Child Protective Services Law as follows:

> Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of this chapter to encourage more complete reporting of suspected child abuse and to establish in each county a child protective service capable of investigating such reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the well-being of the child and to preserve and stabilize family life wherever appropriate.

23 Pa.C.S. § 6302.

It is the government's pursuit of this declared interest that creates the deprivation being complained of here. In pursuit of the "urgent need of an effective child protective service to prevent [the child] from suffering further injury and impairment," *id.*, the hearing examiner has the authority to respond to the assertion that a child will suffer from a face-to-face confrontation with the accused. After a hearing and a determination that a claim of abuse has a substantial basis, the DPW shares the information only with persons and agencies performing investigative and child protective functions. Consequently, our examination of the controls placed on the

availability of this information [9] discloses that the Legislature has circumscribed access to it to such an extent that no one other than those persons in a position to serve the government's interest is authorized to learn of R.'s identity. *See*, 23 Pa.C.S. § 6340(a). Thus, the limited deprivation R. suffers is strictly designed to serve the state's interest.

■ Thus, we are presented with a situation in which the government identifies a case of "indicated" abuse and makes this information available only to persons performing an investigatory or child protective function, when the accuracy of the information was determined at an administrative hearing where the perpetrator of the abuse had a meaningful opportunity to cross-examine the child, but where he was denied an opportunity to communicate with his attorney at one point in the proceedings. On balance, the procedures that were utilized created a very limited risk that R. would suffer an erroneous deprivation. However, in view of the narrow range of situations in which R.'s identity is revealed and the governmental interest these few permissible disclosures are designed to serve, the deprivation itself was likewise very limited. Under the circumstances, we conclude that R. received all the process he was due under the Fourteenth Amendment to the United States Constitution.

Now we consider whether R. was denied due process guarantees provided by the Pennsylvania Constitution. R. cites Sections 1 and 11 of Article I as the source of these rights. Even though the term "due process" appears nowhere in those sections, due process rights are considered to emanate from them.[10]

First we examine Section 1. It provides that

[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are

9. *See* pp. 149–150 *supra.*

10. Section 9 of Article I is also recognized as guaranteeing due process to individuals. *Lyness v. Commonwealth, State Bd. of Medicine,* 529 Pa. 535, 541, 605 A.2d 1204, 1207 (1992) (citing Robert E. Woodside, *Pennsylvania Constitutional Law* 120–21 (1985)). As we have already indicated, its guarantees only apply to criminal proceedings.

those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1. This Court has never synthesized a procedure for assessing whether an interest protected by Article I, Section 1 has been deprived in violation of the provision's due process guarantees. However, we have recognized how closely those guarantees resemble those provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

In *Wilcox v. Pennsylvania Mutual Life Ins. Co.*, 357 Pa. 581, 55 A.2d 521 (1947), we said that the inherent and indefeasible right to acquire, possess and protect property "amounts substantially to the provision contained in the 14th Amendment to the Federal Constitution, that no State shall 'deprive any person ... of property, without due process of law.' " *Id.* at 590, 55 A.2d at 526. We reaffirmed this view in *Best v. Zoning Bd. of Adjustment*, 393 Pa. 106, 141 A.2d 606 (1958). After noting that "Section 1 of Article I of the Pennsylvania Constitution establishes the right of 'acquiring, possessing and protecting property ...' ", we said that "[t]he requirements of this section are not distinguishable from those of Section 1 of the Fourteenth Amendment to the Federal Constitution—nor shall any State deprive any person ... of property, without due process of law....' " *Id.* at 110–11, 141 A.2d at 609 (footnotes omitted).[11]

 *Wilcox* and *Best* required this Court to determine the limits of the Legislature's power to affect property rights.

**11.** Our conclusion in *Wilcox* and *Best* is reflected in later cases. *See Krenzelak v. Krenzelak*, 503 Pa. 373, 382, 469 A.2d 987, 991 (1983) (citing with approval *Wilcox* ); *Rubin v. Bailey*, 398 Pa. 271, 157 A.2d 882 (1960) (citing federal court's rejection of claim that the challenged statute violated federal due process to justify affirmance of trial court's decision to lift preliminary injunction of statute therein challenged for violating due process under Section 1 of Article I of the Pennsylvania Constitution); *Minnich v. Rivera*, 509 Pa. 588, 590 n. 2, 506 A.2d 879, 881 n. 2 (1986) *aff'd* 483 U.S. 574, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987) (noting that the Court's analysis of Fourteenth Amendment due process claim applies equally to due process concerns under Section 1 of Article I of the Pennsylvania Constitution).

That is why we focused on the similarities between Section 1 and the Fourteenth Amendment in the area of deprivations of property. However, this Court has noted that the "Declaration of Rights places reputation 'in the same class with life, liberty and property.'" *Hatchard v. Westinghouse Broadcasting Co.*, 516 Pa. 184, 194, 532 A.2d 346, 351 (1987) (quoting *Meas v. Johnson*, 185 Pa. 12, 19, 39 A. 562, 563 (1898)). Therefore, the due process guarantees that apply to deprivations of property under Section 1 apply with equal force to deprivations of reputation and Section 1's other protected interests. Moreover, those guarantees are identical to those which extend to interests protected by the Due Process Clause of the Fourteenth Amendment. In view of this, we adopt the *Matthews* methodology to assess due process claims brought under Section 1 of Article I of the Pennsylvania Constitution.

▉ The first part of the *Matthews* analysis involves identifying the protected interest that is implicated and assessing the extent to which it is being deprived. When we analyzed R.'s federal claim, we had to consider whether Pennsylvania law conferred on R. a right that was implicated by the concerns he raises. We concluded that R.'s interest in preserving his reputation was the sole interest recognized by state law at issue here. Since we have already performed the *Matthews* analysis to determine that R. suffered no Fourteenth Amendment violation, we hold that R. was not denied due process as guaranteed by Section 1 of Article I of the Pennsylvania Constitution.[12]

12. The absence of a federal due process violation will not always predetermine the disposition of a state due process claim. It does so in this case because reputation, the only interest at stake here, receives due process protections solely by virtue of its status as an interest recognized and protected by Pennsylvania law. *Paul v. Davis*, 424 U.S. at 710–11, 96 S.Ct. at 1165, 47 L.Ed.2d at 419. Thus, the weight that reputational interest carries in the *Matthews* analysis of the federal claim is strictly a reflection of the protections it enjoys under Pennsylvania law. As a result, the *Matthews* analysis would yield the same result irrespective of whether R.'s state or federal due process claim is being examined. That will not necessarily be the case if the interest being deprived is one that receives greater protections under our State Constitution than it does under the Federal Constitution. *See Commonwealth v. Sell*, 504 Pa. 46, 63–64, 470 A.2d 457, 467 (1983) (reaffirming

█ R. cites Article I, Section 11 as an additional source of due process rights under the Pennsylvania Constitution. However, R.'s expungement hearings fall beyond the scope of the proceedings to which Section 11 is addressed. Section 11 provides that

> [a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11. By its very terms, Section 11 speaks to the accessibility of the courts and the administration of justice in them. Since R.'s request to expunge his indicated report was denied as the result of an administrative hearing, not a judicial proceeding, R.'s claim that Section 11 was violated has no merit.

Accordingly, we affirm the Order of the Commonwealth Court.

LARSEN, J., did not participate in the decision of this case.

CAPPY, J., concurs in the result.

PAPADAKOS, J., files a concurring and dissenting opinion.

MONTEMURO, J., who was an appointed justice of the court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.

PAPADAKOS, Justice, concurring and dissenting.

I agree with the majority that the statute under review clearly entrusts the factfinding function to the Secretary or his designee, in this case, the Director of the Office of Hearings and Appeals, and not to the individual hearing examiner. Our decision in *Peak v. Com., Unemployment Compensation Board,* 509 Pa. 267, 501 A.2d 1383 (1985), is controlling and

the view that the Pennsylvania Constitution is an independent source of rights, and that it can provide greater protections than those guaranteed by the Federal Constitution).

compels the conclusion that such a statutory review process is permissible and that it satisfies due process.

However, Appellant complains that he was denied his constitutional right to due process when, during his administrative hearing, he was not permitted to confront his accuser. I must agree with his position and I, therefore, dissent.

During Appellant's expungement hearing, the testimony of his daughter, the alleged sexual abuse victim, was taken *in camera* over his objection that he was being denied his right of confrontation and effective cross-examination. No claim was ever made that his daughter would be unable to testify when faced by Appellant, and no reason was given for denying Appellant's request. Furthermore, the guardian *ad litem* appointed to represent the child witness acknowledged that, although the daughter was apprehensive, she understood that she would be facing Appellant, and she was prepared to do so. After Appellant's objection was overruled, a continuance was requested so that an appeal could be taken from this determination. This request was similarly denied.

Appellant was given the opportunity to review the transcript of the daughter's direct testimony prior to cross-examination. However, during cross-examination, Appellant's attorney requested an opportunity to review the notes of testimony with Appellant. This request was also denied by the hearing examiner.

Appellant contends that the right to confrontation is a due process right guaranteed by the Pennsylvania Constitution which extends to administrative as well as criminal proceedings.

This Court has held that the right of confrontation guaranteed to criminal defendants by Article I, § 9, of the Pennsylvania Constitution mandates that testimony in criminal proceedings be given face-to-face. *Commonwealth v. Ludwig,* 527 Pa. 472, 594 A.2d 281 (1991); *Commonwealth v. Lohman,* 527 Pa. 492, 594 A.2d 291 (1991).

In *Ludwig,* a sexual abuse case, the accuser, her foster mother, and the video camera operator were in a room sepa-

rate from the court room. The judge, prosecutor, defense counsel, defendant, and jury were all in the court room and linked to the child by microphone and video monitor. The child could not see people in the court room, but could hear them and respond to their questions.

In *Lohman,* also a case involving sexual abuse, the accusers gave their testimony in chambers in the presence of the judge, prosecutor, defense counsel, and camera operator. The jury was in the court room, and the defendant, without the jury's knowledge, was in a separate room, able to communicate with his counsel over a direct two-way telephone line.

This court found that the procedures employed by the trial courts in *Ludwig* and *Lohman* violated the defendants' guaranteed constitutional right to "face to face" confrontation. The question left for us to determine is whether this basic constitutional guarantee is mandated in administrative cases such as this, where the issue also involves an allegation of sexual abuse and where the procedures employed are more obtrusive to the factfinding process than those used in *Ludwig* and *Lohman.*

There should be little doubt that the basic principles of due process are fully applicable to hearings before administrative tribunals. *Soja v. Pennsylvania State Police,* 500 Pa. 188, 455 A.2d 613 (1982); *Wiley v. Woods,* 393 Pa. 341, 141 A.2d 844 (1958). Indeed, in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and to cross-examine adverse witnesses. *Soja.*

The United States Supreme Court has often elaborated on this principle.

Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has opportunity to show that it is untrue. While this is important in the case of documentary

> evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment.... This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, ... but also in all types of cases where *administrative* ... actions were under scrutiny. (Emphasis added).

*Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 300 (1970).

Likewise, we have held that adjudicatory action cannot be validly taken by any tribunal, whether judicial or administrative, except upon a hearing wherein each party has the opportunity to know of the claims of his opponent, *to hear the evidence introduced against him, to cross-examine witnesses,* to introduce evidence on his own behalf, and to make argument. *Callahan v. Pennsylvania State Police,* 494 Pa. 461, 431 A.2d 946 (1981).

The primary interest secured by the confrontation clause is the right to cross-examination because it is through cross-examination that the credibility and truthfulness of a witness' testimony are tested.

Another critical purpose of cross-examination is to draw out discrediting demeanor which may be viewed by the factfinder and used by the factfinder in his assessment of the credibility of the witness. For this reason the cross-examiner is permitted not only to delve into the witness' direct testimony to test the witness' perceptions and memory, but also to impeach and discredit the witness. This may be accomplished by revealing possible biases, prejudices, or other ulterior motives as they might relate directly to issues or personalities in the case.

When the right to cross-examination is hindered, as in the present case, the entire fact finding process becomes confused and its reliability is drawn into question. Here, Appellant's counsel was prohibited from contacting Appellant during cross-examination. When Appellant's counsel had completed as much cross-examination as was possible, he noted to the hearing examiner that key items were divulged during cross-examination which were never discussed during direct examination. Based on this, counsel requested an opportunity to print a set of testimony notes to be reviewed with Appellant. Counsel's request was denied. This frustrated the cross-examination process since Appellant had no opportunity to give input to counsel regarding the witness' testimony.

More importantly, Appellant was denied the ability to see the witness testify, hear the testimony against him, or adequately communicate with his counsel regarding that testimony.

What we said in *Ludwig* is particularly relevant in cases like this. "We are cognizant of society's interest in protecting victims of sexual abuse. However, that interest cannot be preeminent over the accused's constitutional right to confront the witnesses against him face to face." 527 Pa. at 480, 594 A.2d at 285.

I believe that the nature of this case and its similarity to *Ludwig* and *Lohman* requires similar treatment. The unjustifiable limitations placed upon Appellant would never have been permitted in a criminal proceeding and cannot be permitted in an administrative hearing, the outcome of which can have serious repercussions for Appellant. The indicated report of child abuse carries with it a finding of fact that Appellant committed "serious physical or mental injury" on his daughter. This report, if not expunged, is evidence which can be released to others who are investigating alleged instances of child abuse allegedly committed by Appellant, such as other child protective services, the Attorney General, courts, law enforcement officers and the other specified individuals listed at 23 Pa.C.S. § 6340. Since this information can

be used in the course of criminal investigations (23 Pa.C.S. §§ 6340(a)(9), (10),[1] we would be remiss if we did not insure that the findings of child abuse are as reliable as possible, as when an accused confronts his accuser and participates in the cross-examination. Neither of these basic truth-testing devices were available to Appellant and require a reversal.

The scholarly attempt of the majority opinion to deny Appellant a basic human right, a level playing field, obfuscates the simple fact that Appellant's reputation and livelihood are placed in great jeopardy by the permanent recording of an Indicated Report of Abuse. Such a report, available to so many public agencies, in effect convicts the Appellant and sentences him to a denial of employment opportunities in areas where children are concerned.

Accordingly, I dissent and would reverse the order of the Commonwealth Court and remand for a new hearing.

---

1. 23 Pa.C.S. § 6340(a) provides in pertinent part:

(a) General rule—Reports ... shall only be made available to:

(9) Law enforcement officials in the course of investigating cases of:

(i) Homicide, sexual abuse, sexual exploitation or serious bodily injury perpetrated by persons whether or not related to the victim.

(ii) Child abuse perpetrated by persons who are not family members.

(iii) Repeated physical injury to a child under circumstances which indicated that the child's health or welfare is harmed or threatened.

(10) Law enforcement officials who shall receive reports of abuse in which the initial review gives evidence that the abuse is homicide, sexual abuse, sexual exploitation or serious bodily injury perpetrated by persons whether or not related to the victim, or child abuse perpetrated by persons who are not family members.