666 A.2d 253

PENNSYLVANIA GAME COMMISSION, Appellant,

v.

Anthony John MARICH, Jr., Appellee.

PENNSYLVANIA GAME COMMISSION, Appellant,

v.

Arn C. ENGLEKA, Appellee.

Supreme Court of Pennsylvania.

Argued April 26, 1995.

Decided Sept. 26, 1995.

William R. Pouss, Harrisburg, for Pa. Game Comm.

Robert P. Ging, Jr., Confluence, for Anthony Marich.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

ZAPPALA, Justice.

■ We granted allocatur to determine whether the revocation of hunting and trapping licenses is subject to the procedural due process requirements of the Pennsylvania and United States Constitutions.

On October 31, 1992, Appellees Anthony John Marich, Jr. and Arn C. Engleka were hunting for waterfowl on Somerset Lake in Somerset County. Wildlife Conservation Officer Daniel Jenkins checked the men and discovered that each was in the possession of ten sea ducks. On the day of the violation, the limit of ducks was three. Officer Jenkins charged Appel-

lees with killing two ducks [1] over the limit of waterfowl established under Section 2102 of the Game and Wildlife Code, 34 Pa.C.S. § 2102. Each pled guilty on a Field Acknowledgment of Guilt form [2] and paid a $200 fine by mail.

On April 6, 1993, the Pennsylvania Game Commission (Commission) imposed a one year revocation of Appellees' hunting licenses.[3] Appellees thereafter requested a hearing, which was conducted on May 21, 1993, by a Hearing Officer from the Bureau of Law Enforcement of the Commission. The hearing was held to consider whether any mitigating or aggravating circumstances existed indicating that the revocation period was excessive or inadequate.

Marich, an avid and experienced hunter, testified at the hearing. He stated that he believed that a bonus limit for sea ducks, which was last permitted during the 1988–89 season, remained in effect. Engleka testified that he relied on Marich's knowledge of the hunting regulations. The Hearing Officer presented the Commonwealth's record.

The Hearing Officer found that since the bonus sea duck limit had not been in effect during the past three seasons, Appellees did not have a legitimate contention for mitigation. Accordingly, he recommended that the revocation period re-

1. The record discloses that although each Appellee possessed seven ducks over the legal limit, settlement was made for two ducks over the limit.

2. The legislature has defined "acknowledgement of guilt" as a written statement admitting guilt, given by an accused individual to an officer or deputy officer along with the payment of a fine, which statement shall have the same force and effect as though the person executing it had a hearing before the proper authority and been convicted of the offense of which he is accused. 34 Pa.C.S. § 102.

3. Appellees' license revocations were imposed pursuant to 34 Pa.C.S. § 2741(b)(1) which provides as follows:

(b) Violations.—In addition to any penalty and costs imposed by this title, the commission may revoke any hunting or furtaking license and deny any person the privilege to secure a license or to hunt or take furbearers anywhere in this Commonwealth, with or without a license, if the license or person:

(1) Has either been convicted or signed an acknowledgement of guilt of violating any of the provisions of this title for such periods as are specified in this subchapter.

main as originally ordered. The Commission concurred with the findings of the Hearing Officer and ordered that the revocation period remain at one year.

Appellees subsequently filed a petition for review in the Commonwealth Court, challenging the Commission's order on the following grounds: (1) that the Commission committed an abuse of discretion in revoking Appellees' licenses because the Field Acknowledgements of Guilt operated as a settlement agreement precluding further action by the Commission; (2) that the regulations establishing the current duck limit were not properly published; (3) that because the Hearing Officer was a member of the Bureau of Law Enforcement of the Commission, the hearing commingled prosecutorial and adjudicative functions in the Commission; (4) that Appellees were treated differently than others; and (5) that the Commission abused its discretion by finding no mitigating circumstances.

The Commonwealth Court reversed and remanded, holding that the commingling of prosecutorial and adjudicative functions by the Commission violated our decision in *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). The court further held that the constitutional infirmities of the case could be remedied by placing the prosecutorial functions in an individual or entity distinct from the individual performing the role of adjudicator. *Marich v. Pennsylvania Game Commission*, 163 Pa.Commw. 167, 170, 639 A.2d 1345, 1347 (1994). The Commonwealth Court did not address Appellees' other issues.

The Commission contends that the Commonwealth Court's reliance on *Lyness* is misplaced because the due process requirements of the Pennsylvania [4] or the United States Constitutions [5] do not protect the sport of hunting.[6]

---

**4.** Due process rights emanate from Article I, Section I of the Pennsylvania Constitution. This section provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuit of their own happiness." Pa. Const. art. I, § 1.

**5.** The 14th Amendment to the United States Constitution provides, in pertinent part, "nor shall any state deprive any person of life, liberty, or

---

**6.** See footnote 6 on page 230.

*Lyness* involved an appeal by a physician whose license to practice medicine and surgery in Pennsylvania was revoked by the State Board of Medicine. The physician asserted that the same board determined that probable cause existed to bring formal charges against him and that his conduct warranted the revocation of his medical license. He contended that because the board acted as both prosecutor and adjudicator, his right to due process was violated.

We held that the right to pursue a livelihood or profession was a protected property right, thus triggering the protective mechanism of due process. *Id.,* 529 Pa. at 542, 605 A.2d at 1207. We concluded that the procedures of the board clearly created an unconstitutional intermingling of the prosecutorial and adjudicatory functions in a single entity. *Id.* at 547, 605 A.2d at 1210. We also determined that a mere possibility of bias under Pennsylvania law is sufficient to raise the red flag of protection offered by the procedural guaranty of due process. *Id.* at 544, 605 A.2d at 1208.

In determining whether the requirements of due process set forth in *Lyness* are applicable to the instant case, we must keep in mind that due process is required under the Fourteenth Amendment of the United States Constitution only if the state seeks to deprive a person of a life, liberty or property interest. *R. v. Com., Dept. of Public Welfare,* 535 Pa. 440, 450, 636 A.2d 142, 147 (1994). We must therefore determine whether hunting is a liberty or property interest to which due process attaches. Should we determine that a protected liberty or property right was involved, we employ the methodology of the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d

property, without due process of law...." U.S. Const. amend. XIV, § 1.

**6.** As we have held that the requirements of Article I, Section I of the Pennsylvania Constitution are not distinguishable from those of the 14th Amendment, *R. v. Com., Dept. of Public Welfare,* 535 Pa. 440, 461–462, 636 A.2d 142, 152–153 (1993), we may apply the same analysis to both claims.

18 (1976), to assess whether the state action offends the Fourteenth Amendment's due process guarantees.[7]

■ To determine whether due process requirements apply, we must look not to the "weight" but to the *nature* of the interest at stake. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570–1, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). We have held that

there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and [the United States Supreme Court has] repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*R. v. Com., Dept. of Public Welfare*, 535 Pa. 440, 451, 636 A.2d 142, 147 (1993), quoting, *Paul v. Davis*, 424 U.S. 693, 710–711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405, 419 (1976) (footnote omitted). The Commonwealth Court overlooked this critical step in its analysis.

The recreational sport of hunting has not been recognized as a constitutionally protected liberty or property interest by state or federal law. Unlike a license to pursue a livelihood or engage in a profession, which has been held to be a property right protected by Article I, Section I of the Pennsylvania Constitution, *Lyness*, no cases have held that provisions of the federal or state constitutions establish or protect a right to hunt or trap or the right to engage in a particular sport. Moreover, Article I, Section 27 of the Pennsylvania Constitution provides that the Commonwealth shall conserve and

7. The *Mathews* analysis consists of three distinct factors which must be considered: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail. *Id.*, 424 U.S. at 336, 96 S.Ct. at 903.

maintain the natural resources and the public estate for the benefit of all the people.

Support for this proposition is found in *Commonwealth v. Patsone*, 231 Pa. 46, 79 A. 928 (1911), *aff'd*, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539 (1914). Although the issue in *Patsone* was whether an act prohibiting unnaturalized foreign-born residents from hunting and from owning double-barreled shotguns was constitutional, the case is instructive on the status of hunting.

> As stated by the learned trial judge: "The right to hunt game is but a privilege given by the Legislature, and is not an inherent right in the residents of the State.... [The State's] power to regulate and prohibit the hunting and killing of game has always been conceded." This subject has been a fruitful source of zealous intention to define and supervise wild birds, animals, game and fish; to regulate how they are to be preserved and taken, declare the open and closed season when they may be taken; the manner and amount of the killing; and the device, implement and method permitted: *Com. v. Immel*, 33 Pa.Superior Ct. 388; *Com. v. McComb*, 39 Pa.Superior Ct. 411.

*Id.*, 231 Pa. at 48–49, 79 A. at 929.

In *Baldwin v. Montana Fish and Game Commission*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), the United States Supreme Court considered the status of hunting with respect to the privileges and immunities provision of Article IV, Section 2 and the equal protection provision of the Fourteenth Amendment of the United States Constitution. The Court held that a hunting license system which imposes more stringent requirements on non-resident hunters does not violate those provisions. The Court went on to say:

> Whatever rights or activities may be fundamental under the Privileges and Immunities Clause, we are persuaded, and hold, that elk hunting by non-residents in Montana is not one of them.

*Id.* at 388, 98 S.Ct. at 1863.

Thus, we hold that hunting is not a property or liberty interest to which the full panoply of due process protections

attach. This is not to say that the Commission has absolute discretion in revoking hunting and trapping licenses. The Administrative Agency Law, 2 Pa.C.S. § 101 et seq., applies to decisions affecting personal privileges and clearly requires procedural and judicial safeguards in the administrative process.

We acknowledge that the requirements of due process are not limited to the revocation of professional licenses. A driver's license also cannot be revoked without the procedural due process required by the Fourteenth Amendment. *Brewster v. Com., Dept. of Transp.*, 94 Pa.Commw. 277, 503 A.2d 497 (1986); *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). However, we find that an individual's interest in driving an automobile far exceeds the interest involved in the sport of hunting. One cannot assume that every type of license administered by the state is afforded the same constitutional protections.

Since we conclude that Appellees' interest is not constitutionally protected, a *Mathews* analysis is unnecessary.

Accordingly, because the Commonwealth Court erroneously extended the concept of procedural due process past the reaches of *Lyness,* we reverse and remand to the Commonwealth Court for a resolution of Appellees' remaining issues.

MONTEMURO, J., is sitting by designation.