**J.B. and S.R., Petitioners,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 4, 2003.
Decided April 17, 2003.
Reargument/Reconsideration
Denied June 19, 2003.

Robert B. Gidding, Bala Cynwyd, for petitioner.

William R. Brenner, Hollidaysburg, for intervenor, Blair County Children & Youth Services.

BEFORE: PELLEGRINI, Judge, COHN, Judge, FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

J.B. and S.R. (Petitioners) petition for review from an order of the Pennsylvania Department of Public Welfare, Office of Hearings and Appeals, (OHA) which adopted the recommendation of the hearing officer to deny Petitioners request to expunge the indicated report of child abuse naming Petitioners as perpetrators.[1]

The facts as found by the hearing officer and adopted by the OHA are as follows:

1. Subject child, N.M., is a male born on December 24, 1987 to Appellant S.R. his mother, and D.M. his father.

2. In November of 2000, subject child left his father's home in Georgia and moved in with his mother S.R., and her paramour Appellant J.B., because of problems D.M. was having with subject child.

3. From November of 2000 through March 6, 2001, N.M. resided with Appellants J.B. and S.R. On occasion, J.B.'s six-year old daughter resided with Appellants and subject child.

4. On March 6, 2001, subject child argued with Appellants because subject child removed cards from a family member's bedroom.

5. Subject child argued with Appellants about three hours the evening of March 6, 2001. Appellants did not believe subject child's explanation about how he came to possess the cards.

6. As appellants and subject child argued, the argument escalated. Subject child was defiant and became aggressive and verbally abusive. At one point he "took a swing" at S.R. and addressed her with expletives.

7. Subject child addressed S.R. with profanities during the argument. He also "pushed her buttons," saying things like "I want my dad and I want you out of my life."

8. At some point during the argument S.R. told subject child she would "give him a whopping" or some other type of discipline, to which subject child cockily replied "why don't you just go ahead and give me a whopping?"

9. S.R. left the room and returned with a large, plastic serving spoon that she placed on a table in front of subject child and then told subject child she was going to hit him with the spoon 20 times.

10. At some point J.B. entered the room S.R. and subject child were arguing in. J.B. and S.R. attempted to diffuse the situation by removing subject child to another area in the home that was less chaotic in the hopes subject child would calm down.

11. Appellants and subject child went to an office on the first floor of their home.

12. When they got to the office Appellants told subject child he could choose between being spanked or being placed outside their home to which subject child replied he would prefer the spanking.

13. Subject child removed his jeans and walked over to J.B., who hit subject child on his buttocks between 10 to 12

1. *See* Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301–6385.

times while S.R. held subject child's wrists.

14. S.R. hit subject child with the spoon about 3 times after J.B. was through.

15. While S.R. hit subject child with the spoon subject child started fighting back violently and Appellants responded by restraining subject child.

16. While placed in a basket-hold by J.B., subject child kicked his 5½ months pregnant mother in the stomach 3 times, whereupon J.B. released subject child, said to subject child "you are out of here," and called 911.

17. When the police arrived they noted subject child did not need medical attention and they placed him in a shelter late on the evening of March 6, 2001.

18. On March 7 and 8 of 2001, subject child was observed to have trouble sitting because his buttocks were sore.

19. Appellants struck subject child on his buttocks in order to correct his behavior. Appellants "responded with a strong level of discipline because we were trying to say this can't happen again ... if physical discipline is to be used you use a level that isn't abusive but it needs to have an impact ... (we) wanted to show him the amount of pain physically he was inflicting in emotional pain with his lies and manipulations."

20. Photographs taken on March 7, 2001, the morning after the incident, depict a series of red, oval-shaped bruises and welts across subject child's buttocks.

21. Appellants' blows to subject child's buttocks caused him to experience severe pain and temporary impairment.

22. Appellant J.B. has a Master's degree in family psychology, a Master's in clinical psychology, and a Doctorate in psychology. Appellant J.B. currently works with autistic children. Based on J.B's education and work experience, he is familiar with different types of disciplinary measures.

23. On March 16, 2001, Blair County CYS filed an indicated report of child abuse against each Appellant.

24. On July 3, 2001, Appellants appealed the decision of the Department to deny their request for expunction of their names from the ChildLine Registry.

Administrative Hearing Recommendation and Adjudication, August 16, 2002 (Adjudication), Findings of Fact Nos. 1–24, at 2–4.

■ Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether the findings of fact were supported by substantial evidence. *B.E. v. Department of Public Welfare*, 654 A.2d 290 (1995). The OHA, and not the hearing examiner, is the ultimate factfinder in child expungement cases. *R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994). "The hearing examiners are assistants who are constitutionally permitted to help the agency by taking, sifting through, and analyzing evidence." *Id.*, at 447, 636 A.2d at 145.

■ Petitioners contend that the agency failed to prove severe pain or temporary impairment, that there was no substantial evidence of criminal negligence, and that the OHA erred in excluding evidence of the subject child's psychiatric history, history of aggressive behavior, and rape of other children and by denying post-hearing motion to reopen the record to present this evidence.

■ The CPSL defines child abuse in pertinent part as follows:

(i) Any recent act or failure to act by a perpetrator which causes nonaccidental

serious physical injury to a child under 18 years of age.

23 Pa.C.S. § 6303(b)(1)(i). Serious physical injury is defined as an injury that "(1) causes a child severe pain; or (2) significantly impairs a child's physical functioning, either temporarily or permanently." 23 Pa.C.S. § 6303(a). In Pennsylvania, a parent may use corporal punishment as a means of discipline provided that the parent does not act with malicious intent and there is not a substantial risk of death, disfigurement, serious bodily injury, gross degradation, extreme pain or mental distress. *See Boland v. Leska,* 308 Pa.Super. 169, 454 A.2d 75 (1982).

■ In the present controversy, Petitioners admit to spanking the subject child with a plastic spoon to "correct the difficulties that was (sic) going on in the home" and not for the purpose of hurting the child. Notes of Testimony, October 12, 2001, at 131. A review of the record reveals that the child did not suffer "severe pain" or "substantial impairment." The child did receive a spanking that approached the edge of child abuse but the evidence presented failed to support such a finding. The testimony revealed that the child had bruises on his bottom and difficulty sitting for a few days. However, there was no mention of "severe pain," broken skin, external bleeding or a showing of substantial impairment. The existence of bruises alone do not establish proof of severe pain. *See N.B. v. Department of Public Welfare,* 107 Pa.Cmwlth. 26, 527 A.2d 623 (1989).

■ The agency also has a duty of showing that criminal negligence caused the injury. *P.R. v. Department of Public Welfare,* 569 Pa. 123, 801 A.2d 478 (2002). Criminal negligence is defined in pertinent part as follows:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(4).

Petitioner's use of a plastic spoon to administer a spanking to the child did not amount to criminal negligence. In these circumstances the decision to use a plastic spoon to spank a child cannot be viewed as a gross deviation from the standard of care a reasonable parent would observe in the same situation. The record is absent of any malice, evil intent or emotional attack by the actors and does not reveal any substantial evidence that the child's injury was more than the normal regrettable result of measured well intentioned corporal punishment. The resulting bruises do not allow us to presuppose an unjustifiable risk that would lead to the finding of criminal negligence.

Accordingly, we must reverse the decision of the OHA.

### ORDER

AND NOW, this 17th day of April, 2003 the order of the Pennsylvania Department of Public Welfare, Office of Hearings and Appeals in the above captioned matter is reversed.