**Anthony John MARICH, Jr., Petitioner,**

v.

**PENNSYLVANIA GAME COMMISSION, Respondent.**

**Arn C. ENGLEKA, Petitioner,**

v.

**PENNSYLVANIA GAME COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 18, 1996.
Decided May 31, 1996.

Robert P. Ging, for Petitioners, Anthony John Marich, Jr. and Arn C. Engleka.

William R. Pouss, for Respondent, Pennsylvania Game Commission.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

This case is before us following remand from the Pennsylvania Supreme Court. Anthony John Marich, Jr. and Arn C. Engleka (Petitioners) petition for review of the July 16, 1993 order of the Pennsylvania Game Commission (Commission) revoking, for one year, Petitioners' hunting licenses for the unlawful taking of waterfowl under the Game and Wildlife Code (the Code), 34 Pa.C.S. §§ 2102, 2741. We affirm.

### Issues

The issues presented for appeal are: 1) whether the Commission abused its discretion in revoking Petitioners' licenses because they had settled the matter with the Game Commission Officer upon his assurance that no revocation would occur; 2) whether the Commission's regulations regarding the seasons and bag limits are vague and confusing because the Commission failed to publish them properly in the Pennsylvania Bulletin; 3) whether the Petitioners were treated differently by the Commission than others who committed similar offenses; 4) whether the Petitioners were induced to settle by a statement by the Commission Officer that they would probably only have to pay a "mistake fine" under 34 Pa.C.S. § 2306, which would not have resulted in the loss of their licenses for one year; and 5) whether the Commission abused its discretion and committed an error of law in ordering the one-year revocation despite the fact that Petitioners presented evidence of mitigating circumstances.

### Background

The facts as found by the Hearing Officer are summarized as follows. On October 31, 1992, Petitioners were hunting for waterfowl on Somerset Lake in Somerset County. When Wildlife Conservation Officer Daniel Jenkins approached and checked Petitioners, he found each of them in possession of ten (10) ducks, which Petitioners admitted killing. Somerset Lake is located in the South Zone and on the day in question, the daily limit of ducks was three (3). Officer Jenkins charged each Petitioner with killing two ducks over the limit of waterfowl established under Section 2102 of the Code.[1] Petitioners each pled guilty on a Field Acknowledgment of Guilt form and paid a $200.00 fine by mail.

At an April 6, 1993 meeting, the Commission imposed a one-year revocation of Peti-

---

1. 34 Pa.C.S. § 2102.

tioners' hunting licenses, effective July 1, 1993. Petitioners then requested a hearing, which was duly held on May 21, 1993, before a Hearing Officer from the Commission's Bureau of Law Enforcement. The purpose of the hearing was to allow the Hearing Officer to consider whether any mitigating or aggravating circumstances existed indicating that the revocation period was either excessive or inadequate.

Petitioner Marich testified that he believed that the seven duck bonus limit for sea ducks, last in effect during the 1988–1989 hunting season, was still in effect in 1992. Marich also testified that he was very active in waterfowl associations, bird-banding activities and habitat restoration work and that he read both the Pennsylvania and the Federal hunting regulations. Petitioner Engleka testified that he relied solely on Marich's knowledge of the hunting laws.

With respect to Petitioner Marich, the Hearing Officer concluded that "[a]lthough he [Marich] appeared sincere and apologetic for his actions, Petitioner offered no testimony nor evidence of any significant mitigating circumstances relevant to his revocation. Therefore, it is my recommendation the revocation period remain as originally ordered." (Reproduced Record, R.R., p. 210a.) Similarly, with respect to Petitioner Engleka, the Hearing Officer recommended that the one-year revocation stand, stating that "[a]lthough Petitioner appeared straightforward at the Administrative Hearing, he offered no testimony of any significant mitigating circumstances that would be relevant." (R.R. p. 212a.)

On July 16, 1993, the Commission concurred in the findings of the Hearing Officer and ordered that the one-year revocations stand as ordered. On appeal to this Court, Petitioners argued that the Commission's proceedings unconstitutionally commingled prosecutorial and ˙adjudicative functions. This Court agreed and relying on our Supreme Court's decision in *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d

1204 (1992), reversed and remanded for further proceedings.

However, on further appeal, our Supreme Court, in an opinion written by Justice Zappala, held that hunting was not a property or liberty interest requiring due process protection under either the United States or Pennsylvania Constitution, and therefore, *Lyness* did not apply. *Pennsylvania Game Commission v. Marich,* 542 Pa. 226, 666 A.2d 253 (1995). The case is now before us on remand from the Supreme Court for resolution of Petitioners' remaining issues.[2]

## Discussion

■ Petitioners argue that they believed they were settling all potential liability with the Commission via the settlement they entered into with Officer Jenkins and that it should have precluded the one-year revocation ordered by the Commission. Petitioners further argue that they were induced to enter the settlement by Officer Jenkins' assurance that no other penalty would be imposed by writing "No revocation recommended" on the Acknowledgment of Guilt forms and by telling them that they would probably only have to pay a "mistake fine" under Section 2306 of the Code. Petitioners also argue that they were induced to settle by Officer Jenkins relating a story to them about a man who was allowed to pay a mistake fine for killing three swans when he thought they were snow geese. Petitioners argue that they were treated differently than others in a similar situation.

The Commission argues that Petitioners' arguments are an impermissible collateral attack on the underlying admissions of guilt that both pled to on the Acknowledgment of Guilt Forms. Furthermore, the Commission argues that the Petitioners "settled" with Officer Jenkins for the number of ducks killed over the limit, and not for the amount or type of penalty to be imposed. The Commission contends that while the Acknowledgment of Guilt form allows a person to settle the fine without the right to a hearing, Sec-

2. Our scope of review of the Commission's adjudication is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Sec-

tion 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pfingstl v. Pennsylvania Game Commission,* 109 Pa.Cmwlth. 577, 531 A.2d 821 (1987), *petition for allowance of appeal denied,* 518 Pa. 645, 542 A.2d 1373 (1988).

tion 926(a) makes it clear that the Commission is not prohibited from any further penalization. We agree.

> The printed receipt for this payment *shall only prove full satisfaction of the monetary fine for the offense committed and in no way shall limit the commission from further revoking hunting and furtaking privileges.*

34 Pa.C.S. § 926(a). (Emphasis added.) We also note that the citations, signed by both Petitioners and Officer Jenkins, contained the following language:

> If you plead guilty to an offense under the Game and Wildlife Code, or acknowledge guilt in the field, your privileges to hunt and trap anywhere in the Commonwealth may be suspended or revoked.

(R.R. pp. 49a, 55a.)

■ As noted, Petitioners claim that they were treated differently than other hunters who had committed similar offenses. Their claim was based upon Officer Jenkins' anecdote about a person who had mistakenly killed three swans. The Commission argues that the only similarity between the two situations is that in each case the Officer allowed the offenders to acknowledge guilt for less than the number of birds actually killed. We agree with the Commission that there is no improper discrimination merely because there has been a license suspension in one case and not in the other.

■ We agree with the Commission's arguments. This Court has held on numerous occasions that once a party has signed a Field Acknowledgment of Guilt form, thereby waiving his right to a hearing, the party cannot collaterally attack his admitted violation on appeal from the administrative action by the Commission resulting in revocation of his hunting privileges. *Pfingstl v. Pennsylvania Game Commission,* 109 Pa.Cmwlth. 577, 531 A.2d 821 (1987), *petition for allowance of appeal denied,* 518 Pa. 645, 542 A.2d 1373 (1988); *Levan v. Pennsylvania Game Commission,* 59 Pa.Cmwlth. 348, 429 A.2d 1241 (1981); *Malishaucki v. Pennsylvania Game Commission,* 58 Pa.Cmwlth. 354, 427 A.2d 787 (1981). Therefore, any argument by Petitioners that Officer Jenkins "misled" or "induced" them to sign the field receipts or that they were treated differently than

others in like situations, "should have been made directly against the charges of Game Law violations . . . to which [they] acknowledged [their] guilt." *Levan,* 429 A.2d at 1242.

■ Petitioners next argue that the Commission's regulations regarding the season and bag limits for hunting ducks are vague and confusing because the Commission failed to publish them in the Pennsylvania Bulletin. Petitioners argue that the Commonwealth Public Documents Law, 45 Pa.C.S. § 702, requires that "[a]ll administrative and other regulations" be published in the Pennsylvania Code and they "shall be published in the first available issue of . . . 'The Pennsylvania Bulletin'. . . ." 45 Pa.C.S. § 724. Petitioners argue that the regulations they allegedly violated were never published in the Pennsylvania Bulletin nor codified in the Pennsylvania Code.

The Commission argues first, that this argument is also an impermissible collateral attack on the underlying acknowledged violations and second, that the assertion that it does not publish its regulations in either the Pennsylvania Bulletin or the Pennsylvania Code is simply untrue. The Commission further argues that since Marich testified that he read both the Pennsylvania *and* Federal regulations, he had four opportunities to read the federal regulations and realize that the seven duck bonus had been eliminated. We agree.

In *Malishaucki,* petitioner had similarly signed an Acknowledgment of Guilt form and paid a fine by mail for violations of the Game Code. On appeal from his subsequent hunting license suspension, Malishaucki argued that the particular provision of the Game Code he was cited for was unconstitutionally vague because it "fail[ed] to provide for a method of measurement of a deer's antler." *Id.,* 427 A.2d at 788. This Court concluded that Malishaucki should have made this challenge directly against the charge of the Game Code violation to which he acknowledged his guilt and that he could not now collaterally attack this violation.

■ Similarly, we believe that Petitioners' arguments that the regulations they acknowl-

edged violating are vague and confusing should have been made directly against the charges made by Officer Jenkins and that they cannot now be raised in this collateral appeal.[3]

■ Finally, Petitioners argue that because the Commission cited no standard or regulation with respect to what would constitute mitigating circumstances and because they did present substantial evidence of mitigating circumstances, the Commission therefore abused its discretion and committed an error of law in ordering the one-year revocations.

The Commission argues that this Court cannot substitute its discretion for that exercised by the Commission, *Bonham v. Pennsylvania Game Commission,* 94 Pa.Cmwlth. 14, 503 A.2d 76 (1985), and that its "failure" to make findings of fact regarding whether or not there were any mitigating circumstances is a matter within its discretion. We agree.

In *Pfingstl,* the petitioner raised the same argument, which this Court rejected, stating that:

> Pursuant to the Game Law, the petitioner may offer evidence of mitigating circumstances. However, unlike the sentencing guidelines for the imposition of a penalty in felonies and misdemeanors, which require articulation upon the record of the reasons for the sentence, there is nothing

in the Game Law which requires the Commission to record on the record its consideration of mitigating circumstances. The fact that this is petitioner's first offense in fifty years of hunting, and may have impelled another to reach a different result, is not sufficient to warrant the reversal of this administrative decision.

531 A.2d at 822–23. (Citation omitted.)

Accordingly, we reject Petitioners' final argument and for all of the reasons set forth above, affirm the order and decision of the Commission.

### ORDER

**AND NOW**, this 31st day of May, 1996, the Pennsylvania Game Commission's July 16, 1993 revocation of the hunting and trapping privileges of Anthony John Marich, Jr. and Arn C. Engleka from July 1, 1993 through June 30, 1994 is hereby affirmed.

---

**3.** Even if we were to address the merits of this argument, we would still find in favor of the Commission. As pointed out by the Commission in its brief, its regulations *are published* in the Pennsylvania Code in Part III of Title 58, 58 Pa.Code § 131.1 et seq. The seasons and bag limits are set forth in Section 139.4, where, under the heading "MIGRATORY GAME BIRDS" it states:

> Except as further restricted by this chapter, the seasons, bag limits, hunting hours and hunting regulations for migratory game birds shall conform to regulations adopted by the United States Secretary of the Interior ... as published in the **Federal Register** on or about August 27 and September 28 of each year.

Section 2103 of the Game Code, 34 Pa.C.S. § 2103, specifically makes the provisions of the applicable federal regulations part of this title. In addition, Section 727 of the Commonwealth Public Documents Law, 45 Pa.C.S. § 727, provides that:

> Except as otherwise provided by regulations promulgated by the joint committee, whenever a document incorporates by reference any portion of the text of any of the following publications the Legislative Reference Bureau, unless the agency specifies otherwise in its order adopting the document, shall omit the text of such incorporated material from the text of the document as published in the code, the permanent supplements thereto, and the bulletin:
>
> ....
> (6) Federal Register....

Accordingly, the duck bag limits for Pennsylvania as published in the September 28, 1992 edition of the Federal Register, Volume 57, No. 188, page 44623, clearly listing a three duck limit, is neither "vague" nor "confusing."