**Jeffrey D. SPENCE, Petitioner**

v.

**PENNSYLVANIA GAME COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 8, 2004.

Decided May 24, 2004.

Anthony S. Potter, Harrisburg, for petitioner.

William R. Pouss, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SIMPSON, Judge, JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Jeffrey D. Spence (Spence) petitions for review of a June 30, 2003 decision of the Pennsylvania Game Commission (Commission) that recalled all propagation permits [1]

1. Propagation involves the reproduction of game or wildlife under captive conditions.

58 Pa.Code § 147.2(a).

held by Spence pursuant to Section 929(a) of the Pennsylvania Game and Wildlife Code (Code).[2] We affirm.[3]

On March 15, 2003, the Commission issued an order to show cause against Spence as to why it should not revoke two deer propagation permits held by him. In the accompanying petition, the Commission alleged that Spence (1) consistently failed to keep records of births, deaths, acquisitions, or disposal of wildlife covered by the permits, (2) failed to provide receipts for deer that had been sold or traded and (3), failed to obtain health certificates of deer imported from Ohio for resale to the United States Drug Agency. The petition thus alleged that Spence did not meet the criteria for possession of a propagation permit under Section 2930 of the Code, 34 Pa.C.S. § 2930, and hence, the permits should be recalled. Spence thereafter filed a timely response to the petition denying the material allegations contained therein.

By letter dated April 22, 2002, the Commission informed Spence that it determined that there was just cause for recalling his propagation permits and further advised Spence that he could petition the Commission for a hearing on the matter. Spence exercised his right to a hearing by letter dated May 15, 2002.

Upon conclusion of the hearings, Hearing Officer Steven Schiffman issued recommended findings of fact and conclusions of law, wherein he concluded that Spence had consistently and consciously failed to issue or retain appropriate receipts detailing various transactions, that he had failed to produce required health certificates upon importing deer from Ohio after having misplaced the receipts, and that the evidence demonstrated that Spence's record keeping was so inconsistent and unreliable that it did not rise to the level of receipts required by the Code. Consequently, the Hearing Officer recommended that Spence's propagation permits be recalled until such time as the Commission determined that Spence is capable of keeping the records as required by statute.

By letter dated June 30, 2003, Vernon R. Ross, Executive Director of the Commission, notified Spence's counsel that he concurred with the Hearing Officer's recommendation and was therefore recalling the propagation permits held by Spence. The letter further informed Spence that he had 30 days in which to lawfully dispose of the deer held under the authority of the permits.

■ In his first argument on appeal, Spence alleges that the Commission's recall of his propagation permits is barred by collateral estoppel inasmuch as the Court of Common Pleas of Jefferson County found him not guilty of violating Sections 2102(c),[4] 2908(a)(5)[5] and 2930(g)(1)[6] of the Code. We do not agree.

2. 34 Pa.C.S. § 929(a).

3. Our review of an agency determination is limited to whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *Marich v. Pennsylvania Game Commission*, 676 A.2d 1325 (Pa.Cmwlth.1996).

4. 34 Pa.C.S. § 2102(c), which provides that the Commission shall promulgate regulations concerning the transportation, introduction into the wild, importation, exportation, sale, offering for sale or purchase of game or wildlife, or the distribution of game or wildlife.

5. 34 Pa.C.S. § 2908(a)(5), which provides that it shall be unlawful to fail to submit any report when required or to keep accurate records.

6. 34 Pa.C.S. § 2930(g)(1), which provides that is it unlawful to have any game or wildlife in possession without the required permit

In *Pennsylvania State Police v. Swaydis*, 504 Pa. 19, 470 A.2d 107 (1983), the Supreme Court addressed the same argument in regard to a state trooper who had been found not guilty of forgery and theft by deception. After the criminal charges had been dismissed, the State Police dismissed the trooper on the basis that he had engaged in improper conduct.

In rejecting the same argument raised by Spence, namely, that dismissal of the criminal charges barred any subsequent civil penalty, the Court stated:

> It is well established that resolution of criminal charges in favor of a criminal defendant does not bar subsequent civil or administrative proceedings concerning the same underlying misconduct. *V.J.R. Bar Corp. v. [Pennsylvania Liquor Control Bd.,* 480 Pa. 322, 390 A.2d 163 (1978)] (administrative sanctions imposed upon a liquor licensee following dismissal of criminal charges). As stated in *Wilson v. Wilson,* 100 Pa.Super. 451, 458 (1931),
>
> > [A] judgment or sentence in a criminal prosecution is neither a bar to a subsequent civil proceeding found on the same facts, nor is it proof of anything in such civil proceeding, except the mere fact of rendition. So, where the same acts or transactions constitute a crime and also give a right of action for damages or for a penalty, the acquittal of [a] defendant when tried for the criminal offense is no bar to the prosecution of the civil action against him, nor is it evidence of this innocence in such action....
>
> Accord *Commonwealth v. Funk,* 323 Pa. 390, 400, 186 A. 65, 69 (1936) (administrative revocation of driver's license following acquittal on drunken driving charge). "The reason for this rule is

> that the administrative action is civil, not criminal, in nature ... designed only for the protection of the public interest through the exercise of the police power...." *V.J.R. Bar Corp.,* 480 Pa. at 326, 390 A.2d at 165.

*Swaydis,* 504 Pa. at 22, 470 A.2d at 108–109.

In the present matter, the Code provides both civil and criminal penalties for violations of the Code's provisions. Sections 2908(b) and 2930(h), 34 Pa.C.S. § 2908(b) and 2930(h), provide that violations thereof constitute summary offenses of the fifth degree punishable by a fine of $100 per violation. *See* 34 Pa.C.S. § 925(b)(8). Additionally, Section 929(a), 34 Pa.C.S. § 929(a), provides that the Commission is authorized to revoke any permit where the holder of the permit has been convicted of an offense under the Code or has acted contrary to the intent of the permit.

Clearly then, violations of the Code may give rise to criminal charges as well as administrative proceedings resulting in the revocation of a license, permit or registration. Because the Code provides for both types of proceedings, Spence's acquittal on the criminal charges of violating the Code does not bar the subsequent proceedings to recall his propagation permits. *Swaydis; see also Craft v. Pennsylvania Game Commission,* 69 Pa.Cmwlth. 474, 451 A.2d 802 (1982)(petitioner's actual guilt or innocence are matters concerning his criminal conviction and are irrelevant in a civil action limited to revocation of hunting and trapping privileges).

█ In his second argument, Spence maintains that the evidence produced at the hearing failed to establish that he was convicted of an offense under the Code or that he acted contrary to the intent of the

receipt, detailed invoice or consignment docu-    ment.

permits. The Commission concedes, as it must, that Spence was not convicted of any offense under the Code. Its argument, however, is that Spence's failure to keep accurate records and produce necessary health certifications regarding the importation of deer into the Commonwealth was clearly in violation of the intent of the permits.

With regard to propagation permits, Sections 2930(d)(3) and (4), (e) and (f) the Code, 34 Pa.C.S. § 2930(d)(3)and (4), (e) and (f), state:

> (d) **Marking game or wild birds.**—No person shall sell, barter, give away or otherwise transfer possession, or offer to sell or barter, any ... game animal ... raised or held under authority of a propagating permit unless that ... game animal ... is marked by any one of the following alternative methods:
>
> ...
>
> (3) On delivery of any live ... game animal ... the permittee shall prepare and deliver to the shipper, purchaser or consignee a receipt, detailed invoice or consignment document which shall include the date, name and address of purchaser or person to whom sold or consigned, the quantity, sex and species of the ... game animal ... and the name, address and permit number of the permittee.
>
> (4) Immediately prior to delivery and removal from the licensed premises of any local ... game animal ... the permittee shall place the ... dead wild animal, or part thereof, in a package or container, or shall attach thereto a label, which package, container or label shall have printed upon it the name, address and permit number of the permittee who produced the ... wild animal. The permittee shall also issue a receipt, detailed invoice or consignment document which shall include the date of shipment or

> sale, the name of the shipper, purchaser or consignee, the quantity, sex and species of the animal ... so shipped or sold and the name and address and permit number of the permittee shipping, consigning or selling the wild ... animals....
>
> ....
>
> (e) **Disposition of game or wildlife.**— Where game or wildlife of any kind is raised ... on premises under authority of a propagating permit, game ... may be sold or given away, and ... animals may be shipped alive or may be killed within the enclosure, for sale or gift, without regard to sex or numbers, at any time of the year. A dealer or third person who arranges any trades, sales or purchases set forth in this subsection for any type of fee, reimbursement or commission shall be required to have and produce, on demand, the receipt, invoice or consignment document required under subsections (d) and (f).
>
> (f) **Receipt for shipping game or wildlife.**—Each shipment of ... animals, living or dead, or parts of ... animals, raised or held under authority of a propagating permit shall be accompanied by a receipt, detailed invoice or consignment document issued by the permittee describing the shipment and stating the origin of the shipment, date, what is being shipped, propagating permit number, destination and any other information which may be required by the director. The receipt, detailed invoice or consignment document shall be available for examination during normal business hours until the shipment reaches its final destination at which time it becomes part of the consignee's record and must be retained for three years.

A simple reading of the above-quoted language reveals that a consistent requirement of the Code is the maintenance

and/or issuance of receipts that include the (1) permittee's name, address, and permit number, (2) the purchaser/consignor's name and address, and (3) information relevant to the species sold, transferred or consigned.

The Hearing Officer found as fact that Officer Roger Hartless informed Spence that he should improve his record keeping methods and that Spence should record births and deaths of deer as they occur.[7] (F.F. 7, 8, 10) In 2001, Spence failed to pass the record keeping portions of the state inspection. (F.F. 11)

The Hearing Officer found several specific instances where Spence failed to comply with the receipt requirements: the first being a 1999 sale of three doe and one buck to Ron Stewart. The receipt(s) for that transaction failed to have both Stewart's and Spence's addresses. Regarding that same transaction, Spence and Stewart entered into an agreement whereby Stewart would take possession of the deer and later pay Spence. Fawns were born of those deer while in Stewart's possession. The funds from Stewart never materialized and, therefore, Spence, the legal owner of the deer, was responsible for the propagation of deer at an unlicensed facility.[8] (F.F. 13)

Additionally, the Hearing Officer found that Spence sold or traded a doe to John Miller, but that the receipt neglected to contain Spence's address, Miller's address and the date of sale. (F.F. 15, 16) A third situation involved the sale of deer to Rob Connor. The Hearing Officer determined that the receipt issued to Connor (1) was not a receipt as contemplated by the Code inasmuch as it was actually a department of health certificate, (2) was altered to include Connor's name, (3) did not have Spence's permittee number, (4) did not include Connor's address, and (5) was backdated. (F.F. 19) Similarly, receipts issued to Joe Mackins failed to include the required information. (F.F. 27, 28)

The Hearing Officer further noted a situation where Spence had informed Officer Hartless that a large male deer had died and was shipped to the Pennsylvania State University for a necropsy report. When Officer Hartless contacted the school, he was informed that it had not received any male deer from Spence for such a report. Pursuant to the Code, any time a deer is shipped, a receipt is to be issued. 34 Pa.C.S. § 2930(f).

In addition to the incomplete receipts issued by Spence, the Hearing Officer noted that Spence would often use receipts out of numerical order, thus making it even more difficult to track the purchase, sale or trade of deer. (F.F. 23–26) Thus, the Hearing Officer opined that Spence's receipts were unreliable and suspect as to their dates because of the random order in which they were used. (F.F. 26) Moreover, each receipt failed to comply with the Code's requirements.

---

7. We agree with Spence that there is no Code provision or regulation mandating that he log the births and deaths of deer held under his propagation permit. However, propagation is defined as the reproduction of animals under captive conditions. 58 Pa.Code § 147.2(a). Therefore, it is logical that a permittee would keep track of the births and deaths of deer when tracking the number of deer held pursuant to the permit. Spence even acknowledged that the Commission has an interest in knowing the number of deer in the Commonwealth and where they are located.

8. There were two receipts issued for that transaction, one showing that Stewart paid for the deer and the other that Spence retained ownership although the deer were in the possession of Stewart. The Hearing Officer determined that both receipts failed to comply with the Code.

The Hearing Officer's findings of fact were based upon the credible testimony of Officer Hartless, who performed the state inspections of Spence's facility. Although Spence offered his own opinions as to the validity of his receipts and the circumstances surrounding each transaction, the Hearing Officer accepted as credible Officer Hartless's testimony, which was corroborated by Exhibits 1–30. Because Officer Hartless's testimony supports the Hearing Officer's findings, the recommendation proposed by him and accepted by the Executive Director is supported by substantial evidence.

Even without considering the Hearing Officer's findings that Spence failed to obtain the necessary health certifications for deer imported from Ohio, there is ample evidence that Spence failed to maintain accurate and complete records in his propagation activities. While Spence suggests that he had a vested right in the propagation permits because Officer Hartless was aware of his record-keeping deficiencies yet passed him upon inspection, Officer Hartless noted on his inspection reports that Spence's record-keeping needed improvement and better organization. Officer Hartless also testified that he had verbally informed Spence that his record-keeping was deficient.

In order to have a vested interest in the propagation permits, Spence must demonstrate that he attempted to comply with the law in due diligence, acted in good faith and expended substantial unrecoverable funds. *See Department of Envtl. Res. v. Flynn*, 21 Pa.Cmwlth. 264, 344 A.2d 720 (1975). Spence testified that every year upon receiving his new propagation permits, he received a copy of the Code and/or the corresponding regulations, that he had read them and that he attempted to follow the Code as opposed to Officer Hartless's suggestions. Nevertheless, he failed to comply even with the basic requirements for completing receipts. Thus, the Hearing Officer would have had difficulty in determining that Spence attempted to comply with the Code in due diligence.

Based upon the foregoing, we cannot conclude that the Commission erred in recalling Spence's propagation permits. Accordingly, we affirm.

### ORDER

AND NOW, this 24th day of May, 2004, it is hereby ordered that the June 30.2003 order of the Pennsylvania Game Commission recalling the propagation permits of Jeffrey D. Spence is AFFIRMED.